**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SCHALA BATTLE, ET AL.,

                Plaintiffs,

    v.

THE UNITED STATES,

                Defendant.

No. 25-1651
Judge David A. Tapp

**DEFENDANT'S MOTION TO DISMISS**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

THOMAS J. ADAIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 353-7955
Thomas.Adair@usdoj.gov

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF THE ISSUES ........................................................................................ 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    I.    Standards of Review ......................................................................................... 4

        A.   Standards for a Rule 12(b)(1) Motion to Dismiss ........................................ 4

        B.   Standards for a Rule 12(b)(6) Motion to Dismiss......................................... 5

    II.   Count I Must Be Dismissed Because The First Amendment Is Not Money Mandating .... 7

    III.  Count IV Should Be Dismissed for Lack of Jurisdiction over APA Claims..................... 10

    IV.  Plaintiffs Breach of Contract Claims in Counts II and III Fail for Multiple Reasons....... 12

        A.   Plaintiffs Failed to Exhaust Administrative Remedies............................... 12

        B.   Plaintiffs Breach of Contract Claim in Count II Fails to State a Claim .................... 15

        C.   Plaintiffs Have Failed to State a Claim for Breach of the Duty of Good Faith and Fair Dealing.................................................................................. 16

CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adair v. United States*,
497 F.3d 1244 (Fed. Cir. 2007) ................................................................................. 5

*Am. Bankers Ass'n v. United States*,
932 F.3d 1375 (Fed. Cir. 2019) ................................................................................. 6

*American Foreign Service Ass'n v. Trump*,
792 F.Supp.3d 116 (D.D.C. 2025) ........................................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 6, 16

*Bowles v. United States*,
No. 24-2354, 2025 WL 1375660 (Fed. Cir. May 13, 2025) ...................................... 9

*Briscoe v. LaHue*,
663 F.2d 713 (7th Cir. 1981) ................................................................................... 5

*Brooks v. United States*,
65 Fed. Cl. 135 (2005) .............................................................................................11

*Cary v. United States*,
552 F.3d 1373 (Fed. Cir. 2009) ................................................................................. 6

*CC Distrib., Inc. v. United States*,
38 Fed. Cl. 771 (1997) .............................................................................................. 5

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) .................................................................................. 4

*Conner v. United States*,
641 Fed. Appx. 972 (Fed. Cir. 2016) ........................................................................ 7

*Crocker v. United States*,
125 F.3d 1475 (Fed. Cir. 1997) ............................................................................... 10

*Department of Education v. California*,
145 S. Ct. 996 .......................................................................................................... 10

*Dept. of Ed. v. California*,
604 U.S. 650 (2025) .................................................................................................11

*Dimare Fresh, Inc. v. United States*,
808 F.3d 1301 (Fed. Cir. 2015) ................................................................................ 6

*Dobyns v. United States*,
915 F.3d 733 (Fed. Cir. 2019) ................................................................................. 16

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .................................................................................................... 14

iii

*Feist v. United States*,
   148 Fed. Cl. 168 (2019) ......................................................................... 5

*Fisher v. United States,*
   402 F.3d 1167 (Fed. Cir. 2005) ......................................................... 5, 7

*Great-West Life & Annuity Ins. Co. v. Knudson,*
   534 U. S. 204 (2002) ............................................................................11

*Hashi v. United States*,
   162 Fed. Cl. 618 (2022) ........................................................................ 8

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011) .............................................................................. 4

*Irwin Cnty. v. United States*,
   170 Fed. Cl. 355 (2024) ................................................................. 12, 16

*Keltner v. United States*,
   165 Fed. Cl. 484 (2023) ....................................................................10, 11

*Kyrgoski Const. Co. v. United States*,
   94 F.3d 1537 (Fed. Cir. 1996) ............................................................ 16

*LeBlanc v. United States*,
   50 F.3d 1025 (Fed. Cir. 1995) .............................................................. 8

*Lee v. Evans*,
   31 Fed. Appx. 680 (Fed. Cir. 2002) ................................................... 13

*Lindsay v. United States*,
   295 F.3d 1252 (Fed. Cir. 2002) ............................................................ 6

*Lion Raisins, Inc. v. United States*,
   416 F.3d 1356 (Fed. Cir. 2005) .......................................................... 10

*M. Maropakis Carpentry, Inc. v. United States*,
   609 F.3d 1323 (Fed. Cir. 2010) .......................................................... 12

*Martinez v. United States*,
   333 F.3d 1295 (Fed. Cir. 2003) .......................................................... 10

*Maweu v. United States*,
   No. 25-1469, 2025 WL 2995528 (Fed. Cl. Sept. 24, 2025) ................. 9

*McDonnell Douglas Corp. v. United States*,
   182 F.3d 1319 (1999) .......................................................................10, 11

*Metcalf Const. Co., Inc. v. United States*,
   742 F.3d 984 (Fed. Cir. 2014) ............................................................ 16

*Murphy v. United States*,
   993 F.2d 871 (Fed. Cir. 1993) ............................................................ 10

*Nat'l Star Route Mail Contractors Ass'n, Inc. v. United States Postal Serv.*,
   223 F.Supp.3d 14 (D.D.C. 2016) ....................................................... 13

*Newtech Rsch. Sys. LLC v. United States*,
   99 Fed. Cl. 193 (2011) .......................................................................... 5

*Palmer v. United States*,
168 F.3d 1310 (Fed. Cir. 1999) .................................................................... 4

*Precision Pine & Timber, Inc. v. United States*,
596 F.3d 817 (Fed. Cir. 2010) ............................................................... 16, 17

*Reflectone, Inc. v. Dalton*,
60 F.3d 1572 (Fed. Cir. 1995) .................................................................. 12

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1998) ..................................................................... 5

*Roberts v. United States*,
745 F.3d 1158 (Fed. Cir. 2014) ................................................................... 7

*Rocky Mt. Helium, LLC v. United States*,
841 F.3d 1320 (Fed. Cir. 2016) ................................................................... 6

*Seneca Sawmill Co. v. United States*,
149 Fed. Cl. 83 (2020) ............................................................................... 17

*Star Alaska Hous. Corp. v. United States*,
76 Fed. Cl. 158 (2007) ............................................................................... 17

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................................................... 4

*Sunrez Corp. v. United States*,
157 Fed. Cl. 640 (2022) ............................................................................... 6

*Sys. Application & Tech., Inc. v. United States*,
26 F.4th 136 (4th Cir. 2022) ...................................................................... 13

*Tanzin v. Tanvir*,
592 U.S. 43 (2020) .................................................................................... 8, 9

*Terry v. United States*,
103 Fed. Cl. 645 (2012) ............................................................................... 6

*Trusted Integration, Inc. v. United States*,
659 F.3d 1159 (Fed. Cir. 2011) ............................................................... 4, 5

*United States v. Connolly*,
716 F.2d 882 (Fed. Cir. 1983) ................................................................. 7, 8

*United States v. Fausto*,
484 U.S. 439 (1988) ................................................................................... 14

*United States v. Mitchell*,
463 U.S. 206 (1983) ..................................................................................... 7

*Vanquish Worldwide, LLC v. United States*,
134 Fed. Cl. 72 (2017) ................................................................................. 5

**Statutes**

5 U.S.C. § 702 .............................................................................................. 11

5 U.S.C. § 1101 ............................................................................................................. 4

5 U.S.C. § 2101 ............................................................................................................. 4

5 U.S.C. § 2105 ........................................................................................................... 13

22 USC 2396(a)(3) .................................................................................................. 3, 14

26 USC Section 911 ...................................................................................................... 3

28 U. S. C. §1491(a)(1) ............................................................................................... 11

28 U.S.C. § 1491 .......................................................................................................... 7

41 U.S.C. Chapter 71 .................................................................................................... 3

42 U.S.C. § 1983 .......................................................................................................... 9

## Rules

RCFC 8(a)(2) ............................................................................................................... 16

RCFC 9(k) .............................................................................................................. 16, 17

RCFC 12(h)(3) .............................................................................................................. 5

Rule 12(b)(1) ............................................................................................................. 5, 9

Rule 12(b)(6) ............................................................................................................. 5, 6

## Regulations

48 C.F.R. § 33.204 ..................................................................................................... 12

FAR 37.104 ................................................................................................................ 13

FAR 37.104(a) ........................................................................................................... 13

**INTRODUCTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this motion to dismiss the first amended complaint filed by plaintiffs on November 21, 2015. ECF No. 9 (Am. Compl.).

Plaintiffs are former personal service contractors who worked abroad pursuant to contracts with the United States Agency for International Development (USAID). Their personal service contracts were terminated in early 2025 pursuant to the termination for convenience clause in those contracts. Plaintiffs decry the allegedly political nature of these contract terminations and assert four claims against the Government arising from those terminations, but all four claims should be dismissed.

To start, the Court does not have jurisdiction over Plaintiffs' First Amendment claim (Count I) because the First Amendment is not a money mandating source of law. Likewise, it is black letter law that the Court does not have jurisdiction over Administrative Procedure Act claims, so Count IV must likewise be dismissed. Similarly, the Court should dismiss Plaintiffs' contract (Count II) and good faith and fair dealing (Count III) claims because Plaintiffs failed to satisfy the jurisdictional prerequisites to bring suit in this Court pursuant to the Contract Disputes Act. And finally, Plaintiffs' contract claims should be dismissed for failure to state a claim upon which relief can be granted because USAID terminated Plaintiffs' contracts pursuant to the express termination for convenience provision in the contracts. Accordingly, Defendant respectfully requests this Court grant this motion and dismiss Plaintiffs' first amended complaint.

**STATEMENT OF THE ISSUES**

1.      Whether Count I of Plaintiffs' amended complaint—a First Amendment Claim—is within the Court's subject matter jurisdiction given that the First Amendment is not money mandating and reinstating plaintiffs to their positions is outside the relief the Court may award.

2.      Whether Count IV of Plaintiffs' amended complaint—a claim under the Administrative Procedures Act (APA)—is within the Court's subject matter jurisdiction given that the Court does not have jurisdiction over Administrative Procedures Act.

3.      Whether Plaintiffs have exhausted their administrative remedies, including obtaining a final determination from the contracting officer, and thus, whether they are entitled to bring suit for breaches of contract.

4.      Whether Plaintiffs have stated a claim upon which relief may be granted in Count II, a breach of contract claim.

5.      Whether Plaintiffs have stated a claim upon which relief may be granted in Count III, which is a claim for breach of the covenant of good faith and fair dealing.

**BACKGROUND**

The 28 Plaintiffs in this case worked for USAID pursuant to personal service contracts with the agency.  Am. Compl. at 1.  Plaintiffs served in different positions with distinct responsibilities.  *See id*. ¶¶ 18-45.  In late February 2025, USAID terminated Plaintiffs' contracts. *Id.* ¶ 7.  Plaintiffs concede that the terminations were for done for the convenience of the agency. *Id.* ¶ 107.  Section 16(a)(2) of the personal service contract of plaintiff, Schala Battle,[1] sets forth the applicable termination for convenience provision.  It provides:

---

[1]  Schala Battle's contract is attached as Exhibit A to the Amended Complaint as an exemplar personal service contract that is representative of the other plaintiffs' contracts.  Am. Compl. at 10, n. 1.

> For the convenience of USAID, by giving not less than 15 calendar days advance written notice to the contractor. Upon such a termination, contractor's right to compensation shall cease when the period specified in such notice expires except that the contractor shall be entitled to any unused vacation leave, return transportation costs and travel allowances and transportation of unaccompanied baggage costs at the rate specified in the contract and subject to the limitations which apply to authorized travel status.

Am. Compl. Ex. A ¶ 16(a)(2). The contracts also state that "[t]his contract is subject to 41 U.S.C chapter 71, Contract Disputes." Am. Compl. Ex. A at 51.

The USAID personal service contracts at issue were "[a]warded [p]ursuant to: Section 636(a)(3) of the Foreign Assistance Act of 1961, as amended." Am. Compl. Ex. A at 1. A "special note" in the contracts also refers to Section 636(a)(3) and provides:

> For U.S. Citizens and U.S. Resident Aliens: As an employee for purposes of Section 636(a)(3) of the Foreign Assistance Act of 1961, as amended (22 USC 2396(a)(3)), the Contractor is generally an employee of the United States for purposes of laws other than those administered by the Office of Personnel Management (i.e., Title 5, United States Code). This includes being an employee of the United States for the purposes of Title 26, United States Code, which subjects the Contractor to withholding for both FICA and Federal Income Tax and precludes the Contractor from receiving the federal earned income tax exclusion of 26 USC Section 911.

*Id.* at 2. This provision aligns with Section 636(a)(3) of the Foreign Assistance Act of 1961 (FAA), which provides "[a]ppropriations for the purposes of or pursuant to this Act . . . shall be available for . . . contracting with individuals for personal service abroad: Provided, That such individuals shall not be regarded as employees of the United States Government for the purpose of any law administered by the Civil Service Commission." 22 U.S.C. § 2396(a)(3).[2] Because these personal service contractors are not employees for purposes of Title V of the United States Code (which deals with government organizational matters, including civil employment rights),

---

[2] Section 636(a)(3) of the Foreign Assistance Act of 1961, Pub. L. No. 87-195, 75 Stat. 424 (1961) is codified in the U.S. Code at 22 U.S.C. § 2396(a)(3).

they are not federal government employees for all purposes.[3]  Thus, although Plaintiffs allege that they shared certain rights and obligations with federal civil service employees, such as annual leave, locality pay adjustments, and GS-scale step increases, those rights and obligations arose from the personal service contracts, not Title V.  *Cf.* Am. Compl. ¶¶ 56-68; Am. Compl. Ex. A at 20, 11.

## ARGUMENT

### I.    Standards of Review

#### A.    Standards for a Rule 12(b)(1) Motion to Dismiss

Whether the Court possesses subject-matter jurisdiction is a threshold matter that the parties can raise at any time and that the Court has a continuing independent obligation to determine exists.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011).  Without jurisdiction, "the court cannot proceed at all in any cause, . . . [and] the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co.*, 523 U.S. at 94 (citation omitted).

The plaintiff bears the burden of proving by preponderant evidence that the Court possesses jurisdiction to entertain the claims in their complaint.  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  The defendant, in turn, may challenge whether plaintiffs met their burden through a Rule 12(b)(1) motion to dismiss.  *See Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999).  Once the Government challenges facts upon which plaintiff bases this Court's jurisdiction, however, the plaintiff bears the burden to demonstrate that jurisdiction exists.  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.

---

[3]  Part II of Title V addresses civil service protections, including the responsibilities of the Merit Systems Protection Board.  *See* 5 U.S.C. § 1101, *et seq.*  Part III addresses employee rights and obligations, including employment and retention rights.  *See* 5 U.S.C. § 2101, *et seq.*

Cir. 1993). When confronted with such a challenge, the plaintiff may not "rely merely on the allegations in the complaint" but "must instead bring forth relevant competent proof to establish [the Court's] jurisdiction." *Vanquish Worldwide, LLC v. United States*, 134 Fed. Cl. 72, 76 (2017) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1998)). If the plaintiff fails to proffer such proof, the Court must dismiss the plaintiff's claims. RCFC 12(h)(3); *see Feist v. United States*, 148 Fed. Cl. 168, 170 (2019).

In evaluating a Rule 12(b)(1) motion, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc.*, 659 F.3d at 1163. The Court may also consider any relevant evidence outside the pleadings to determine its jurisdiction. *Newtech Rsch. Sys. LLC v. United States*, 99 Fed. Cl. 193, 200 (2011) (citations omitted), *aff'd*, 468 F. App'x 985 (Fed. Cir. 2012). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *CC Distrib., Inc. v. United States*, 38 Fed. Cl. 771, 775 (1997) (quoting *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)).

"If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) (*citing Fisher v. United States,* 402 F.3d 1167, 1173 (Fed. Cir. 2005). "If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted." *Id.*

## B.    Standards for a Rule 12(b)(6) Motion to Dismiss

A party may assert by motion the defense of "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Under this standard, a party's pleading must contain factual allegations that establish "more than a sheer possibility that a defendant has acted unlawfully" or a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Id.*  To this end, it is well settled that a complaint should be dismissed pursuant to Rule 12(b)(6) "when the facts asserted by the [plaintiff] do not entitle [them] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

In deciding a Rule 12(b)(6) motion, the Court generally "must presume that the facts are as alleged in the complaint[] and make all reasonable inferences in favor of the plaintiff." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009).  The Court, however, is not required to accept legal conclusions asserted in the complaint. *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).  Nor is the Court required to accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012) (quotation marks and citation omitted).  The Court's review is thus "not limited to the four corners of the complaint." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015).  Accordingly, in addition to "consider[ing] the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which [the] court may take judicial notice," *Rocky Mt. Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016), the Court may also look to "matters . . . integral to the claim[s]" in the complaint when deciding a Rule 12(b)(6) motion. *Dimare Fresh, Inc.*, 808 F.3d at 1306; *Sunrez Corp. v. United States*, 157 Fed. Cl. 640, 652 (2022) (on a 12(b)(6) motion, "the Court may consider the complaint, its proper attachments, documents incorporated into the complaint by

6

reference.")

## II.    Count I Must Be Dismissed Because The First Amendment Is Not Money Mandating

Count I of Plaintiff's Complaint is premised solely upon the First Amendment.  Am. Compl. ¶¶ 113-20.  Plaintiffs allege that USAID's termination of their personal service contracts violated their First Amendment rights because the termination constituted "retaliation based on political affiliation." *Id*. ¶ 114.  As a result, Plaintiffs allege they are entitled "to reinstatement, backpay, compensatory, and other relief." *Id.* ¶ 120.  This claim, however, fails because it is well-established that the First Amendment is not money mandating, and therefore, any claim based upon the First Amendment is outside this Court's jurisdiction.

As Plaintiffs set forth, this Court's subject matter jurisdiction is derived from the Tucker Act at 28 U.S.C. § 1491.  Am. Compl. ¶11; *see also, Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).  It is hornbook law that "a plaintiff must identify a separate source of substantive law that creates the right to money damages" to come within the jurisdictional reach and sovereign-immunity waiver of the Tucker Act.  *Id.*  "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.*; *see also, Conner v. United States*, 641 Fed. Appx. 972, 975 (Fed. Cir. 2016).  "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983).  To qualify as a money-mandating source of law, a statute or regulation "must be such that [it] 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (citation omitted).  If the statute or regulation as alleged and pleaded "is not money-mandating, the court shall so declare and shall dismiss the cause for lack of jurisdiction." *Fisher*, 402 F.3d at 1173.

The First Amendment is not money mandating.  *United States v. Connolly*, 716 F.2d 882,

7

887 (Fed. Cir. 1983) ("[T]he first amendment, standing alone, cannot be so interpreted to command the payment of money."); *Hashi v. United States*, 162 Fed. Cl. 618, 620 (2022) (*citing LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995)).  As the Federal Circuit explained in *Connolly,* the First Amendment "merely forbids Congress from enacting certain types of laws; it does not provide persons aggrieved by governmental action with an action for damages in the absence of some other jurisdictional basis." 716 F.2d at 887.  "[T]he literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages." *Id.*

Importantly for this case, the Federal Circuit explained in *Connolly* that although alleged violations of the First Amendment may form part of a separate cause of action that falls within this Court's jurisdiction, the First Amendment may not serve as the sole basis of a claim.  716 F.2d at 887.  In *Connolly*, for example, the Court explained that violation of the First Amendment may form part of the basis for a wrongful discharge claim brought under a statute that is explicitly money mandating.  *Id*.  This provides helpful context for understanding the case upon which Plaintiffs rely to argue that this Court has jurisdiction to hear their First Amendment claim.  Citing *Tanzin v. Tanvir*, 592 U.S. 43, 51 (2020), plaintiffs assert that this Court has jurisdiction to hear their First Amendment claims because the First Amendment "serves as a money-mandating source of substantive law in special cases[,]" which plaintiffs suggest is the case when "money damages are the only form of appropriate relief." Am. Compl. ¶ 12.  This mischaracterizes *Tanzin* and ignores *Connolly* altogether.

In *Tanzin*, the plaintiffs sued under the Religious Freedom Restoration Act of 1993 (RFFA), which was specifically enacted "to provide a remedy to redress Federal Government violations of the right to free exercise under the First Amendment." *Id.* at 43.  The Supreme

8

Court held that the RFRA "provides, as one avenue for relief, a right to seek damages against Government employees." *Id.* at 49. But the Court in *Tanzin* did not find the RFRA (or the First Amendment for that matter) itself to be money mandating because it only allows damages via 42 U.S.C. § 1983. *See Maweu v. United States*, No. 25-1469, 2025 WL 299528, at *2 (Fed. Cl. Sept. 24, 2025) (citing *Tanzin*, 592 U.S. at 52). Much as with the alleged First Amendment violation in *Connolly* therefore, the RFRA provides monetary relief but only through a different money-mandating statute (and even then, only against Government employees). The legal tenet that the *First Amendment* alone is not money mandating thus remains true. *See Maweu*, 2025 WL 2995528, at *2 (dismissing First Amendment claim); *Bowles v. United States*, No. 24-2354, 2025 WL 1375660, at *2 (Fed. Cir. May 13, 2025) (affirming dismissal of First Amendment claim).

Indeed, Plaintiffs appear to concede that even after *Tanzin* the Court can only consider the alleged violation of a plaintiff's First Amendment rights if that plaintiff has identified an "underlying claim" that is "tied to violation of legislation or regulation that can be fairly interpreted as contemplating money damages." Am. Compl. ¶12. But the Plaintiffs here fail to identify the "legislation or regulation" that they assert to be money mandating and under which they are seeking damages for the alleged violation of their First Amendment rights. *See generally* Am. Compl. ¶¶113-120. That is, although Plaintiffs recognize that to recover monetary damages from this Court for violations of the First Amendment even after *Tanzin*, the constitutional violations must be tied to statute setting forth the right to such damages, the Plaintiffs' First Amendment claim in Count I is based entirely on the First Amendment, not an underlying money-mandating provision of law. Therefore, Count I must be dismissed pursuant to RCFC 12(b)(1).

### III.    Count IV Should Be Dismissed for Lack of Jurisdiction over APA Claims

This Court lacks jurisdiction to entertain the Administrative Procedure Act (APA) claim alleged in the complaint at Count IV (Am. Compl. ¶¶138-148).  It is black letter law that this Court lacks jurisdiction of APA claims.  *See Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) ("[T]he Court of Federal Claims lacks APA jurisdiction."); *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) (citing *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) ("[N]o APA review is available in the Court of Federal Claims."); *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) ("But the Claims Court has no authority to invoke the APA.").  Thus, Count IV is jurisdictionally infirm and should be dismissed pursuant to Rule 12(b)(1).

Plaintiffs' assertion otherwise is based on a misunderstanding of the law, in particular, a misreading of a recent Supreme Court decision.  Plaintiffs assert that

> The Court applies the APA standard of review when the record of the administrative process needs to be reviewed to determine whether the United States violated government employees' pay entitlements, *see Keltner v. United States*, 165 Fed. Cl. 484 (2023), or when the administrative record could establish that contractual termination was pretextual or unrelated to the contractors' alleged inability to fulfill their obligations. *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319 (1999); *see also Department of Education v. California*, 145 S. Ct. 996 [sic] (Apr. 4, 2025) (finding that APA claims seeking recovery of contractual money damages should proceed at the Court of Federal Claims).

Am. Compl. ¶139.  Based on these legal citations, Plaintiffs contend that this Court now has jurisdiction to review USAID's termination of Plaintiffs' contracts as a final agency action under the APA.  Am. Compl. ¶144.

Plaintiffs' reliance on *Department of Education v. California* is misplaced.  Indeed, that *per curiam* decision supports dismissal of the Plaintiffs' APA claim for lack of jurisdiction. *Dept. of Ed. v. California*, 604 U.S. 650 (2025).  In that case, a federal district court issued a

temporary restraining order (TRO) enjoining the Government from terminating education related grants and requiring the Government to pay past-due obligations.  The district court's order "rested on a finding that respondents are likely to succeed on the merits of their claims under the [APA]." *Id.* at 650-51.  The Supreme Court stayed the TRO, holding that the Government was likely to "succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.*  The Supreme Court explained that the APA's waiver of sovereign immunity does not apply (1) if another statute grants consent to the suit expressly or impliedly forbids the relief sought, *id.* (citing 5 U.S.C. § 702), or (2) to claims seeking "money damages." *Id.* (citing 5 U.S.C. § 702).   Both of those situations exist when a plaintiff seeks money damages stemming from an express or implied contract with the United States.  *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002); 28 U. S. C. §1491(a)(1)).  Thus, the Supreme Court did not hold that this Court now has jurisdiction to adjudicate APA claims despite decades of contrary precedent, but that a claim for money damages stemming from a contract with the United States must instead be brought as a contract claim under § 1491(a)(1) in this Court. [4]  Accordingly, the long-standing tenet that this Court does not have jurisdiction over APA claims is still in effect, and this Court should dismiss Plaintiffs' APA claim for lack of jurisdiction.

---

[4]  Plaintiffs' citation in paragraph 139 of the amended complaint to cases applying a standard like that found in the APA does not advance their contention that this Court has jurisdiction to consider APA claims. "The Court reviews the decision of a Secretary acting through a Correction Board according to a standard *borrowed* from the [APA]." *Keltner v. United States*, 165 Fed. Cl. 484, 502 (2023) (quoting *Brooks v. United States*, 65 Fed. Cl. 135, 140 (2005)).  *McDonnell Douglas Corp. v. United States* is likewise inapposite because it was adjudicating claims brought under the Contract Disputes Act (CDA), not the APA.  182 F.3d 1319, 1324 (Fed. Cir. 1999).

IV.    **Plaintiffs Breach of Contract Claims in Counts II and III Fail for Multiple Reasons**

A.    **Plaintiffs Failed to Exhaust Administrative Remedies**

"The statutory language of the CDA is explicit in requiring a contractor to make a valid claim to the contracting officer prior to litigating that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010). "The purpose of this requirement is to encourage the resolution of disagreements at the contracting officer level thereby saving both parties the expense of litigation." *Id.* (citing 48 C.F.R. § 33.204; *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1580 (Fed. Cir. 1995)). A "contractor must have received a final decision from the contracting officer before proceeding to this Court" on a Contract Disputes Act (CDA) claim. *Irwin Cnty. v. United States*, 170 Fed. Cl. 355, 360 (2024). This requirement of a contracting officer's final decision is jurisdictional. *Id.* 360-61. If a contractor brings a breach of contract claim to this Court without a contracting officer's final decision denying the claim, this Court does not have jurisdiction to adjudicate the claim. *Id.*

Despite the fact that the Plaintiffs' personal service contracts with USAID expressly state that they are "subject to" the CDA (Am. Compl. Ex. A at 52) including the CDA's claim requirement (*id.*), plaintiffs have not alleged that they submitted a single claim to USAID or obtained a single contracting officer's final decision prior to bringing this case, which requires dismissal of their contract claims. In fact, plaintiffs effectively concede that they have not done so by alleging that they should not have to comply with the requirements of the CDA, despite the clear terms of their contracts, because "the United States is required by both law and the text of the contract to identify and treat the Plaintiffs as federal employees[.]" Am. Compl. ¶112. In other words, Plaintiffs' effort to evade the requirements of the CDA, and dismissal of Counts II and III, hinge on the proposition that they are "federal employees through contracts" (Am.

12

Comp. ¶ 16) endowed with all the rights and privileges of federal employment and not subject to the express terms of their contracts. But that is not the law.

Federal Acquisition Regulation (FAR) 37.104(a) "recognizes two methods by which the government can obtain personal services: (1) 'by direct hire under competitive appointment or other procedures required by the civil service laws,' or (2) by procurement under a FAR 37.104 personal service contract." *Lee v. Evans*, 31 Fed. Appx. 680, 681 (Fed. Cir. 2002) (quoting FAR 37.104). Although Plaintiffs contend that they are "federal employees through contracts" and thus exempt from the CDA's requirements, they do not allege that they were directly hired under competitive appointment or other procedures and instead concede that their relationship with USAID is governed by their personal service contracts. Am. Compl. ¶¶18-45; *see* 5 U.S.C. § 2105 (identifying the criteria necessary for an individual to be considered a civil service appointed employee); *see Lee*, 31 Fed. Appx. at 681-82 (noting the existence of a disputes clause in a contract indicated that the contractor was employed under a personal services contract and not by appointment under the civil service laws). Thus, Plaintiffs appropriately concede that they are personal service contractors. And although FAR 37.104(a) "recognizes that the personal service contract creates an 'employer-employee' relationship," as do the terms of the plaintiffs' contracts for some matters (*e.g.,* Am. Compl. Ex. A at 2), that does not mean that Plaintiffs can disregard the express terms of their contracts with USAID, which subject the contracts to the CDA. *See American Foreign Service Ass'n v. Trump*, 792 F.Supp.3d 116, 133-34 (D.D.C. 2025) ("Services contracts like those between [personal service contractors] and USAID generally fall within the CDA's ambit.") (citing *Nat'l Star Route Mail Contractors Ass'n, Inc. v. United States Postal Serv.*, 223 F.Supp.3d 14, 21, 30 (D.D.C. 2016) (applying CDA to claims for Postal Service delivery contractors); *Sys. Application & Tech., Inc. v. United States*, 26 F.4th 136, 170 (4th Cir.

13

2022) (applying CDA to claims from Navy service contractors)).

Accordingly, Plaintiffs have not and cannot identify any authority for their contention that despite being personal service contractors with USAID via contracts expressly subject to the CDA, they are nevertheless not subject to the requirements of the CDA.  *E.g.,* Am. Compl. ¶112. At best, Plaintiffs point to "Section 636(a)(3) of the Foreign Assistance Act of 1961 (FAA)," Am. Compl. ¶ 111, but that provision does not help plaintiffs because it provides "[a]ppropriations for the purposes of or pursuant to this Act . . . shall be available for . . . contracting with individuals for personal service abroad: Provided, That such individuals *shall not be regarded as employees of the United States Government for the purpose of any law administered by the Civil Service Commission.*"  22 U.S.C. § 2396(a)(3) (emphasis added).  Clearly then, although Plaintiffs have an employer-employee relationship with USAID in certain respects, they are not akin to direct-hire federal employees and, more precisely, they are not entitled to the employment protections afforded federal employees in title 5 of the United States Code, which is administered by the Office of Personnel Management.  Instead, as spelled out in their personal service contracts, termination of their relationship with USAID is governed by contract, including the contract's termination for convenience provisions and the CDA.[5]

Accordingly, because Plaintiffs are personal service contractors with contracts expressly subject to the CDA's claim requirements, their failure to submit claims to their contracting officer precludes this Court's jurisdiction over their contract claims.  Counts II and III should therefore

---

[5]  We note that if plaintiffs are indeed federal employees in all respects and need not adhere to the requirements of the CDA despite the express terms of their contracts, they would be subject to the Civil Service Reform Act and required to bring their wrongful discharge claims to the Merit Systems Protection Board, not this Court. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11–12 (2012); *United States v. Fausto*, 484 U.S. 439, 444–45 (1988) (the Court of Federal Claims is "not an appropriate authority to review an agency's personnel determination")

be dismissed under Rule 12(b)(1).

###### B.      Plaintiffs Breach of Contract Claim in Count II Fails to State a Claim

Somewhat paradoxically, although Plaintiffs allege in their amended complaint that they are exempt from the CDA's requirements because they are federal employees, they also contend in Count II that the Government was obligated to treat them as federal employees for only some purposes but not for others. Am. Compl. ¶¶124, 126. Plaintiffs thus allege that USAID breached their contracts somehow because it did not follow these alleged contractual provisions. *Cf.* Am. Compl. ¶¶ 125, 127. Similarly, Plaintiffs allege that the Government breached the contract when it terminated them for convenience in a manner that allegedly violates their rights. *Id.* ¶ 128.

Plaintiffs, however, fail to sufficiently allege how USAID breached the personal service contracts. To start, the allegation that USAID treated Plaintiffs as employees for some purposes and not for others does not sufficiently allege a breach of contract for which this Court can award relief. For example, Plaintiffs contend that they could receive GS scale step increases "on par with direct hires." Am. Compl. ¶ 59. But Plaintiffs do not identify what provision of their contract this allegedly breached, and they also do not identify what monetary relief they seek because of the alleged breach. The same is true for the other ways in which Plaintiffs allege USAID treated them like employees. *See also* Am. Compl. ¶¶ 53-68. Thus, even accepting the allegations as true as we must, USAID's treatment of Plaintiffs as employees for some purposes and not for others does not mean that USAID breached the contracts, and we are still in the dark as to what harm Plaintiffs allege as a result of this treatment.

With respect to the contract termination itself, the terms of the contract expressly provide USAID with the right to terminate for USAID's convenience. Am. Compl. Ex. A at 37, ¶ 16(a)(2). "The Government has considerable latitude to terminate a contract for convenience and

15

may exercise its right to do so unilaterally." *Kyrgoski Const. Co. v. United States*, 94 F.3d 1537, 1540-41 (Fed. Cir. 1996). Aside from conclusory assertions that USAID had an obligation to refrain from terminating the contract in a manner that violated Plaintiffs' rights, Plaintiffs do not identify any specific contract provision USAID breached when it exercised its contractual right to terminate for convenience. Nor have plaintiffs articulated a well-pleaded challenge to the agency's decision to exercise its termination for convenience rights. *See Irwin Cnty. v. United States*, 170 Fed. Cl. 355, 369-71 (2024).

In the end, a party does not breach a contract by exercising its contractual rights, which is what happened here. Plaintiffs' conclusory assertions of a breach fail to comply with RCFC 9(k), which requires a plaintiff to identify the applicable provisions of a contract that were breached. Likewise, Plaintiffs' conclusory allegations fail to provide fair notice of the claim and thus fail the requirements of RCFC 8(a)(2). *Twombly*, 550 U.S. at 555, n.3. Accordingly, Count II should be dismissed.

### C. Plaintiffs Have Failed to State a Claim for Breach of the Duty of Good Faith and Fair Dealing

A party cannot breach the duty of good faith and fair dealing by doing something that is expressly allowed by a contract. *Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) ("An act will not be found to violate the duty [of good faith and fair dealing] (which is implied in the contract) if such a finding would be at odds with the terms of the original bargain, . . . [including if it would] conflict[] with a contract provision."); *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019); *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010) ("The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties

16

inconsistent with the contract's provisions."); *N. Star Alaska Hous. Corp. v. United States*, 76 Fed. Cl. 158, 188 (2007), *dismissed*, 226 Fed. Appx. 1004 (Fed. Cir. 2007).

Plaintiffs concede that their contracts were terminated for convenience. Am. Compl. ¶ 107. It is undisputed that plaintiffs' contracts provide USAID with the right to terminate for convenience. *Id.*; Ex. A to Am. Compl. at 37, ¶ 16(a)(2).[6] Consequently, plaintiffs cannot allege that the termination of their contracts for convenience violated the duty of good faith and fair dealing given the express provision allowing such a termination.

Finally, Plaintiffs' contention that USAID's alleged violations of the First Amendment demonstrate a breach of the duty of good faith and fair dealing are misplaced. The obligations that the duty of good faith and fair dealing impose on parties to a contract are determined by what the contract requires. *Precision Pine,* 596 F.3d at 830; *Seneca Sawmill Co. v. United States*, 149 Fed. Cl. 83, 101 (2020) (the duty is focused on "faithfulness to an agreed common purpose and consistency with the justified expectations" of the parties). The contracts here permitted USAID to terminate the contracts for convenience, so USAID exercising that contract provision was not beyond the reasonable expectations of the parties. Accordingly, Plaintiffs' allegation that the Government breached the duty of good faith and fair dealing when USAID terminated the contracts for convenience fails, and the claim in Count III should be dismissed.

---

[6] It is notable, that plaintiffs' breach of contract claims (Counts II and III) do not allege a breach of the terms of Section 16(a)(2) of their contracts, the termination for convenience clause. No where in plaintiffs' amended complaint do they cite or even reference this provision found on page 37 of Exhibit A to the amended complaint. If there was a true breach of the terms of their contracts, the breached term(s) and the manner in which it was breached should be identified. In fact, RCFC 9(k) requires it. Yet, plaintiffs fail to do so.

**CONCLUSION**

For these reasons, the Government respectfully requests that the Court dismiss plaintiffs' first amended complaint.

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

/s/ Thomas J. Adair
THOMAS J. ADAIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 353-7955
Thomas.Adair@usdoj.gov

January 12, 2026                    Attorneys for Defendant