**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SCHALA BATTLE *et. al*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No.25-1651 |
| | ) |
| THE UNITED STATES, | )    Judge David A. Tapp |
| | ) |
| Defendant. | ) |

<u>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**</u>

Thomas M. Craig, Esq.

*Of Counsel*:
Kia Rahnama, Esq.

**Fluet**
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
T : (703) 590-1234
F : (703) 590-0366
tcraig@fluet.law
krahnama@fluet.law
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 4

STANDARD OF REVIEW .................................................................................................... 5

ARGUMENT ......................................................................................................................... 7

   I.    The Court Has Jurisdiction Over this Breach of Contract Claim Like Any Other non-CDA Breach of Contract Claim ...................................................................................... 7

      A.   Plaintiffs are not Subject to the CDA because Congress Required Plaintiffs to be Treated as Federal Employees thereby Excluding them from CDA's Ambit ................. 7

      B.   The Case Involves Constitutional and Statutory Issues that the Court is Apt and Authorized to Answer, and not a CDA Contracting Officer ........................................ 12

      C.   The Mere Existence of a Termination for Convenience Clause is Immaterial for Sufficiently Pleading a Breach of Contract Claim and Breach of the Duty of Good Faith and Fair Dealing ..................................................................................................... 13

   II.   The Court Has Jurisdiction over the First Amendment Claim ...................................... 15

      A.   The Court has Historically Exercised Jurisdiction over First Amendment Claims in Federal Backpay Cases as Special Set of First Amendment Claims that are "Founded upon the Constitution" ............................................................................................... 16

      B.   The Supreme Court Has Held that First Amendment Claims Can also be Money Mandating When the Underlying Act of Congress Anticipates Money Damages ........ 18

         1.   The Supreme Court's Decision in *Tanzin* ................................................................. 19

         2.   *Tanzin* Applies in This Case ..................................................................................... 20

   III.  The Court has Jurisdiction over the APA Claims ......................................................... 21

CONCLUSION ..................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Anchor Tank Lines, LLC v. United States*,
127 Fed. Cl. 484 (2016) ............................................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 5

*Axon Enterprise, Inc. v. FTC*,
143 S. Ct. 890 (2023) ................................................................................................ 12

*Banks v. United States*,
741 F.3d 1268 (Fed. Cir. 2014) .................................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 5

*Boaz Housing Authority v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ................................................................................ 15

*Branti v. Finkle*,
445 U.S. 507 (1980) .................................................................................................... 1

*Broadbent Portable Laundry Corp. v. United States*,
56 Ct. Cl. 128 (1921) .................................................................................................. 6

*Chappell v. Wallace*,
462 U.S. 296 (1983) .................................................................................................. 24

*Chevron USA Inc. v. Echazabal*,
536 U.S. 73 (2002) ...................................................................................................... 9

*Coastal Corp. v. United States*,
713 F.2d 728 (Fed. Cir. 1983) .................................................................................... 7

*Dept. of Ed. v. California*,
604 U.S. 650 (2025) .................................................................................................. 21

*Elrod v. Burns*,
427 U.S. 347 (1976) .................................................................................................... 1

*Featheringill v. United States*,
217 Ct. Cl. 24 (1978) ................................................................................................ 16

*Flying Food Group, Inc. v. N.L.R.B.*,
  471 F.3d 178 (D.C. Cir. 2006)................................................................................ 7

*Fort Bragg Association of Educators v. Federal Labor Relations Authority*,
  870 F2d 698 (D.C. Cir. 1989)................................................................................ 9

*Grieg v. United States*,
  640 F.2d 1261 (Ct. Cl. 1981)................................................................................ 24

*Hayes v. U.S. Postal Service*,
  859 F.2d 354 (5th Cir. 1998) .............................................................................. 10

*Huntington Promotional & Supply, LLC v. United States*,
  114 Fed. Cl. 760 (2014)......................................................................................... 7

*Jackson v. United States*,
  192 Ct. Cl. 765 (1970) ................................................................................... 15, 17

*Jennings v. Town of Stratford*,
  263 F. Supp. 3d 391 (D. Conn. 2017)................................................................. 20

*JKB Solutions and Serv., LLC v. United States*,
  18 F.4th 704 (Fed. Cir. 2021) ............................................................................. 14

*Keltner v. United States*,
  165 Fed. Cl. 484 (2023)....................................................................................... 21

*Kingsville Indep. School Dist. v. Cooper*,
  611 F.2d 1109 (5th Cir. 1980) .............................................................................. 1

*Lambro v. United States*,
  90 F.4th 1375 (2024) ........................................................................................... 10

*Lion Raisins, Inc. v. United States*,
  416 F.3d 1356 (Fed. Cir. 2005) ..................................................................... 21, 22

*Martinez v. United States*,
  333 F.3d 1295 (Fed. Cir. 2003) .......................................................................... 21

*Mathews v. Diaz*,
  426 U.S. 67 (1976) .............................................................................................. 12

*McDonnell Douglas Corp. v. United States*,
  182 F.3d 1319 (1999) .......................................................................................... 21

iv

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990) ................................................................................. 20

*Murphy v. United States*,
   993 F.2d 871 (Fed. Cir. 1993) ....................................................... 21, 22

*Olivia v. United States*,
   961 F.3d 1359 (Fed. Cir. 2020) ........................................................ 5, 6

*Pasteur v. United States*,
   814 F.2d 624 (Fed. Cir. 1987) ................................................................ 8

*Pucci v. Somers*,
   834 F. Supp. 2d 690 (E.D. Mich. 2011) ............................................. 20

*Roth v. United States*,
   378 F.3d 1371 (Fed. Cir. 2004) ............................................................. 5

*Rutan v. Republican Party*,
   497 U.S. 62 (1990) ................................................................................... 1

*S. Corp. v. United States*,
   690 F.2d 1368 (Fed. Cir. 1982) ........................................................... 17

*Sanders v. United States*,
   594 F.2d 804 (Ct. Cl. 1979)................................................................. 24

*Swaaley v. United States*,
   180 Ct. Cl. 1, 376 F.2d 857 (1967)..................................................... 17

*Tanzin v. Tanvir*,
   592 U.S. 43 (2020) ................................................................................ 19

*Trusted Integration, Inc., v. United States*,
   659 F.3d 1159 (Fed. Cir. 2011) ............................................................. 5

*United States v. Behan*,
   110 U.S. 338 (1884) ................................................................................ 6

*United States v. Boyd*,
   378 U.S. 46 (1964) ................................................................................... 8

*United States v. Connolly*,
   716 F.2d 882 (Fed. Cir. 1983) ................................................. 16, 17, 18

*United States v. New Mexico*,
   455 U.S. 720 ........................................................................................................... 8

*United States v. Spearin*,
   248 U.S. 132 (1918) ............................................................................................... 6

*Walls v. United States*,
   582 F.3d 1358 (Fed. Cir. 2009) ........................................................................... 22

*Weinberger v. Salf*,
   422 U.S. 749 (1975) ............................................................................................. 12

*White v. United States*,
   175 Fed. Cl. 146 (2025) ................................................................................. 23, 24

**Statutes**

22 U.S.C. § 2396(a)(3) ............................................................................................... 9

28 U.S.C. § 1491(1) .................................................................................................. 18

41 U.S.C. § 7101 ................................................................................................... 8, 11

5 U.S.C. § 1302 .......................................................................................................... 9

5 U.S.C. § 8101 ........................................................................................................ 13

Foreign Assistance Act of 1961. Pub. L. No. 87-195, 75 Stat. 424 (1961) ................... 9

**Rules**

RCFC 12(b)(1) ............................................................................................................ 5

RCFC 12(b)(6) .......................................................................................................... 14

RCFC 9(k) ................................................................................................................... 7

**Regulations**

20 C.F.R. § 1.2 ......................................................................................................... 13

FAR 37.104(b) ............................................................................................................ 9

FAR Subpart 3.6 - *Contracts with Government Employees or Organizations Owned or Controlled by Them* ........................................................................................... 11

**INTRODUCTION**

The United States terminated Plaintiffs, a group of highly talented and dedicated federal employees, from the U.S. Agency for International Development (USAID) with no individualized assessment of their work or review of their rights and entitlements as federal employees. Federal officials in charge of Plaintiffs termination made contemporaneous public statements—with no reservations—that Plaintiffs were being terminated for their perceived political affiliation and even accused them of criminal misconduct. *See* Am. Compl. ¶ 70-88 (ECF No. 9).

The First Amendment, as the cornerstone of the American constitutional system, prevents the federal government from relying on perceived political patronage, political affiliation, political sponsorship, or political support to determine who should be hired, fired, transferred, recalled from layoff, promoted, or not promoted. *Elrod v. Burns*, 427 U.S. 347 (1976) (finding that firing a government employee because of political affiliation violates the First Amendment); *Branti v. Finkle*, 445 U.S. 507, 510-11 (1980) (finding that public employers violated the First Amendment when there was circumstantial evidence that employees were about to be terminated because of their affiliation with the Republican Party, and when there was no evidence indicating performance issues); *Rutan v. Republican Party*, 497 U.S. 62 (1990) (First Amendment is violated when public employees are denied job benefits due to their political beliefs). Public employees whose rights have been violated in such a manner are entitled to back pay and reinstatement. *See e.g.*, *Kingsville Indep. School Dist. v. Cooper*, 611 F.2d 1109, 1114 (5th Cir. 1980) (upholding judgment of "the usual award of back pay cover[ing] the period from wrongful termination to effective reinstatement" when public employee's contract was not renewed to punish for speech in violation of the First Amendment).

Defendant's motion to dismiss is bereft of any explanation as to why such an egregiously illegal public display preceded Plaintiffs' termination, which jeopardized the career of employees

1

who had loyally and faithfully served the United States with no performance or conduct issues. Neither does the United States dispute that its conduct exhibited a textbook violation of the First Amendment and its well-settled law.

Instead, the Defendant asserts that 1) Plaintiffs have no judicial recourse for the violation of their First Amendment constitutional rights (anywhere!) and that 2) a contracting officer must oversee the claims before this Court has the authority to independently determine whether the United States has violated the Constitution, the Foreign Assistance Act, and a bevy of other statutory obligations the United States owes to its federal employees.

The Government's insistence to submit the dispute to a contracting officer—or its insistence that the Government can use termination for convenience of the government as a get-out-of-jail-free card—is a dead-end, for the simple reason that the Government accepted and treated Plaintiffs as federal employees in every aspect of their service, and not as contractors. The Government's motion to dismiss does not dispute any of the allegations in the Complaint about how the Government subjected Plaintiffs to a slew of statutory requirements that are, by law, only applicable to federal employees and not contractors. Those working for the federal government can be either federal employees or contractors, not both.

Having acknowledged Plaintiffs as federal employees, the Government cannot absolve itself of the constitutional guarantee that federal employees enjoy against unlawful terminations by claiming that Plaintiffs are contractors when it suits the government, simply because that is the label the United States used in their agreement. As federal employees, the Plaintiffs have the right to adjudicate the true basis of their termination in the federal courts, and the Government cannot use termination for the convenience of the government to circumvent that constitutional right.

Things are what they are, and not what they are called. Just as a "rose is a rose is a rose is a rose,"[1] a federal employee is a federal employee when they are required by law to be regarded as a federal employee, and when they are in fact treated as such and operate as such.

Because Plaintiffs are employees of the Federal Government, the Government is barred for all intents and purposes from applying the Contract Disputes Act (CDA), which only applies to contractors, to their employment. Congress, through the Contract Disputes Act's plain language, has barred federal agencies from applying that law to services performed by federal employees. The power to terminate for the convenience of the government is also largely a creature of the Federal Acquisition Regulations (FAR) (which implements the Contract Disputes Act) and does not automatically extend to every contract signed by the Government. Because Plaintiffs' relationship to the Government is not, and cannot, be governed by the CDA, the Government cannot exercise the broad power to terminate Plaintiffs for the convenience of the government or demand that this claim be submitted to a contracting officer under the CDA before Plaintiffs can be heard at the Court. As the Federal Circuit has held for decades: not every government contract is a CDA contract. Like a whole host of non-CDA contract cases that are reviewed by the Court of Federal Claims every day, Plaintiffs are entitled to assert breach of contract without reference to the CDA or the need to exhaust before a contracting officer.

Additionally, as contracted federal employees, Plaintiffs are protected by the First Amendment against removal based on perceived political affiliation. Contrary to the Government's assertions in the motion to dismiss, the Court of Federal Claims is not categorically barred from reviewing First Amendment Claims or reviewing the administrative record of

---

[1] Written by Gertrude Stein as part of the 1913 poem Sacred Emily, the observation reflects a truth about the law of identity: that what things are named or labeled as have little to do with what they actually are. Gertrude Stein, Sacred Emily (1913) ("Rose is a rose is a rose is a rose.").

employee discipline under the Administrative Procedure Act (APA) to decide if the Government's decision to terminate Plaintiffs was arbitrary and capricious; the Court of Federal Claims has historically done both. The Court's history and tradition, the Supreme Court's recent guidance regarding First Amendment and APA remedies, as well as the contractual nature of Plaintiffs' underlying claims, provide jurisdiction for the Court to review the First Amendment and the APA claims, and the case should proceed to discovery.

## BACKGROUND

USAID terminated the 28 Plaintiffs' employment in this case, with no individualized assessment of their work and performance, in February of 2025, citing instead the Agency's authority to terminate the contracts for the convenience of the Government.[2] The Government's only authority for issuing a personal services contract to Plaintiffs was the Foreign Assistance Act (FAA) of 1961. The contracting officers did not rely on the FAA to justify the termination. The FAA's plain language required USAID to not regard Plaintiffs as federal employees for purposes of Title V of the United States Code, and, therefore, to treat them as federal employees for all other purposes. Throughout the course of the contracts' performance, and by terminating the contracts, USAID violated both sides of Congress's clear edict, first, by treating Plaintiffs as federal employees for purposes of Title V (what the Government concedes in its motion to dismiss, it was legally required not to do, *see* Def.'s Mot. at 9 (ECF No. 12)), and, second, by failing to treat Plaintiffs as federal employees for all purposes other than Title V.

---

[2] Defendant's background summary incorrectly states that "Plaintiffs concede that the terminations were done for the convenience of the Agency," citing to paragraph 107 of the amended complaint. Def.'s Mot. at 23. That paragraph does not "concede" that the terminations were done for the convenience of the Agency and very clearly only states, and accepts as true, that "USAID terminated the contracts by relying on the government's authority to terminate contracts for convenience," expressing no position as to whether or not the contracts in this case have actually been terminated for the convenience of the Agency, as that requires the Court's legal determination on whether the power could be lawfully exercised in this case and whether it was in fact lawfully exercised, both are yet to be resolved.

The Government also failed to provide any pre-termination safeguards or reviews to ensure that the terminations were not informed or influenced by the decisionmakers' contemporaneous public statements, especially statements about how the employees slated for termination were those who were not politically affiliated with the Republican party, and in fact, were suspected of engaging in criminal conduct. The contracting officers terminated Plaintiffs' employment without providing any termination costs, without assessing whether Plaintiffs are entitled to any compensation due to their status as federal employees, or accounting for Plaintiffs' rights as federal employees against removal based on political affiliation.

## STANDARD OF REVIEW

To survive a motion to dismiss, the complaint must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with "sufficient factual matter ... to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 868 (2009). In reviewing the motion to dismiss, the Court must "take all plausible factual allegations in the complaint as true and construe the facts in the light most favorable," to the plaintiffs. *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020). Plaintiffs must establish the Court's jurisdiction with preponderance of evidence. *Trusted Integration, Inc., v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). This entails alleging sufficient facts in the complaint that "plausibly support" the contention that the Government has violated a contract, an act of Congress, a regulation, or a constitutional provision which the Court of Federal Claims is authorized to issue a money judgment based on. *See Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

The Court reviews the motion to dismiss Count I and IV of the Complaint to determine whether the Court has subject-matter jurisdiction under RCFC 12(b)(1). The court is not limited

to the pleadings in considering subject matter jurisdiction. *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014).

The Court reviews the motion to dismiss as to Counts II and III under RCFC 12(b)(6) to assess whether the Complaint sufficiently states a claim upon which relief can be granted.

In breach of contract cases the Court assumes that if the Government terminates a contract without proper justification, such termination is a breach of the contract and the Government becomes liable for all the damages resulting from the wrongful act. *United States v. Behan*, 110 U.S. 338, 346 (1884); *United States v. Spearin*, 248 U.S. 132, 138 (1918). The damages will include not only the injured party's expenditures and losses in partially performing the contract, but also, if properly proved, the profits that such party would have realized if they had been permitted to complete the contract. *Broadbent Portable Laundry Corp. v. United States*, 56 Ct. Cl. 128, 132 (1921). At the motion to dismiss stage, plaintiffs must only allege the nature of damages, and there is no need to "allege details of the damages calculation in the complaint," to establish jurisdiction. *Olivia v. United States*, 961 F.3d 1359, 1364 (Fed. Cir. 2020) (citing *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354 (Fed. Cir. 2018)).

## ARGUMENT

I. **The Court Has Jurisdiction Over this Breach of Contract Claim Like Any Other non-CDA Breach of Contract Claim**[3]

A. **Plaintiffs are not Subject to the CDA because Congress Required Plaintiffs to be Treated as Federal Employees thereby Excluding them from CDA's Ambit**

Defendant's affirmative defense that Counts II (breach of contract) and III (breach of the covenant of good faith and fair dealing) should be dismissed for failure to exhaust administrative remedies under the CDA is profoundly wrong. The United States is barred by the text of the Foreign Assistance Act and the CDA, from subjecting Plaintiffs, who are required by law to be regarded as federal employees, to the CDA. Therefore, the Court must reject Defendant's argument, and the case should proceed to discovery without exhaustion of administrative remedies, like every other non-CDA breach of contract before the Court.

Not every contract with the federal government is a CDA contract. *See Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983) (holding that CDA "does not cover all government contracts"); *see also Anchor Tank Lines, LLC v. United States*, 127 Fed. Cl. 484, 494

---

[3] Defendant's motion to dismiss includes repeated attacks on the sufficiency of the pleadings in the Complaint as to Counts II and III, even though the Government's motion only raises affirmative defenses to challenge these counts, namely exhaustion of administrative remedies and the legal force (if any) of the contracts' termination for convenience clauses. None of these challenges go to the sufficiency of the pleading because under the federal rules of procedure, Plaintiffs are not required to address or negate affirmative defenses in the complaint. *Flying Food Group, Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir. 2006) (plaintiff is not required to negate affirmative defenses in complaint, and allegations to avoid or defeat such defenses lie outside burden of pleading). In its haste to dismiss this case at its earliest stage, without opportunity for discovery and extensive briefing on issues of law and damages that are appropriate for summary judgment, the Government attempts to frame its own lack of knowledge about the governing law and the legal consequences that will flow from its breach as a pleading issue that Plaintiffs are required to solve for them. The Government's confusion about the correct pleading standard is exhibited through its false assertion that "RCFC 9(k) *requires*" Plaintiffs to identify all breach term(s) in their complaint and identify the manner in which they were breached. Def.'s Mot. at 23 n.6. RCFC 9(k) does not pose such a requirement, and the Government cites to no Court of Federal Claims authority for that claim. RCFC 9(k) is satisfied when plaintiffs attach a copy of the contract to their pleading "[i]n lieu of," a description of applicable provisions because the Court can independently investigate the supporting documents. *See Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 765, 771 (2014) (noting that the purpose of RCFC 9(k) is to establish that Plaintiffs had a valid contract with the United States and the rule is satisfied when "a party [] identif[ies] the substantive provisions of the contract..on which the party relies [,] *or* [] annex[es] a copy of the contract to the complaint") (emphasis added); *see also* Am. Compl. Ex. A.

7

(2016) (collecting cases rejecting the government's argument that CDA applied to a contract). And a contract with the federal government certainly does not magically transform into a CDA contract because the federal agency labels it as such for its own benefit or inserts FAR clauses into the contract. Instead, to qualify as a CDA contract, the contract must comply with the plain language of the CDA itself, which raises a question of statutory interpretation for the Court. *Pasteur v. United States*, 814 F.2d 624, 626 (Fed. Cir. 1987) (determining whether a contract is covered by the CDA "involves statutory interpretation, which is a question of law on which the Court must exercise its independent judgment.").

Critically for this case, the plain language of the CDA—and its exhaustion requirement— only apply to "contractors," and that term has a statutory definition that "means a party to a Federal Government contract *other than the Federal Government*." *See* 41 U.S.C. § 7101 (emphasis added). Federal employees are part of the federal government and therefore, as a matter of statutory interpretation, excluded from the CDA. *See e.g., United States v. New Mexico*, 455 U.S. 720, 740 (finding that "[i]n contrast to federal employees…contractors cannot be termed 'constituent parts' of the Federal Government.") (no citation for internal quotation in original but referencing *United States v. Boyd*, 378 U.S. 46 (1964)).

The CDA itself does not authorize the federal government to craft and sign CDA contracts for personal services. Instead, the CDA can only be incorporated as a mechanism in a contract for personal services when Congress has otherwise authorized a federal agency (through separate

legislation) to hire personal services contractors.[4] In this case, the only legal authority the Agency had for hiring Plaintiffs is Section 636(a)(3) of the Foreign Assistance Act of 1961. Pub. L. No. 87-195, 75 Stat. 424 (1961), *as codified in* 22 U.S.C. § 2396(a)(3). That section states that Plaintiffs "shall not be regarded as employees of the United States Government for the purpose of any law administered by the Civil Service Commission." The reference to laws "administered by the Civil Service Commission" means any laws that are today administered by the Office of Personnel Management (OPM) the successor to the Civil Service Commission. The Civil Service Commission administered (at the time of FAA's passage), and OPM administers today, only the civil service laws impacting federal employees that appear in Title 5 of the U.S. Code. *See* 5 U.S.C. § 1302 ("The Office shall prescribe and enforce regulations for the administration of the provisions of this title…). Applying the traditional tools of statutory interpretation—as the Court must— means that Congress' decision to include one thing implies the exclusion of all others not mentioned. *Chevron USA Inc. v. Echazabal*, 536 U.S. 73, 80 (2002). Therefore, by stating that Plaintiffs shall not be regarded as federal employees only for the purposes of one set of laws, (those appearing in Title V), Congress mandated that Plaintiffs be considered as federal employees for the purposes of all and many other personnel laws that appear outside of Title V, which apply to all other federal employees.

Therefore, the Plaintiffs are federal employees for the purposes of all non-Title V laws, and as such, cannot be regarded as contractors for any reason because they have rights and

---

[4] The Defendant's motion to dismiss incorrectly implies that the Government may hire personal services contractors by generally relying on FAR 37.104. Def.'s Mot. at 19. The FAR only provides implementing regulations and does not independently authorize hiring personal services contractors. Instead, because hiring employees by contract, rather than by direct hire, circumvents personnel laws, agencies may not do so unless such action has been specifically authorized by Congress. *Fort Bragg Association of Educators v. Federal Labor Relations Authority*, 870 F2d 698, 703 (D.C. Cir. 1989) (finding that the Army must identify specific authorization from Congress for its use of PSCs); *see also* FAR 37.104(b) ("Agencies shall not award personal services contracts unless specifically authorized by statute (e.g., 5 U.S.C. 3109) to do so.").

obligations enshrined in other statutes that a contracting officer has no authority to review, opine about, or enforce. *See Hayes v. U.S. Postal Service*, 859 F.2d 354, 356 (5th Cir. 1998) ("....it is usually assumed that government employment is not subject to the CDA since the employment relationship with the government is controlled in detail by other statutes").

The Government's motion to dismiss asserts that "[b]ecause these personal service contractors are not employees for purposes of Title V of the United States Code (which deals with government organizational matters, including civil employment rights), they are not federal government employees for all purposes," Def.'s Mot. at 10, providing no legal support for that statement. The Government's position is legally incorrect (yet, ironically, perfectly captures how and why the Agency, also operating under the same flawed reasoning adopted by the Government now, violated the Plaintiffs' rights and entitlements in terminating them, as the Agency then, and the DOJ now, both fundamentally misunderstand the scope of Plaintiffs' rights).

As the Federal Circuit has held, whether or not an individual working for the Federal Government is considered a federal employee for the purposes of Title V is not conclusive of whether they are federal employees or not for other purposes. In *Lambro v. United States*, the Federal Circuit provided direction to the Court of Federal Claims to refrain from referencing the Title V qualifications for being considered a federal employee to determine if those working for the federal government are federal employees for other purposes outside of Title V. 90 F.4th 1375 (2024) (finding that a non-Title V worker is a federal employee for the purposes of the Fair Labor Standards Act (FLSA) because of that statute's own language). The Government itself conceded that point on appeal in *Lambro. Id*. at 1383 (noting that "appointment, as the government concedes, is not always necessary for employment status with the federal government (even for general-purpose employment status)"). The Government's statement that Plaintiffs are not federal

10

employees for any purposes if they are not federal employees for Title V purposes directly contradicts the Federal Circuit's order and the Government's own previous representations.[5]

The CDA itself, which appears in Title 41, is a non-Title V law, and, therefore, the plain language of the FAA requires that Plaintiffs be regarded as federal employees for the purposes of the CDA. Notably, the CDA itself also explicitly excludes contracts where the services are provided by federal employees. 41 U.S.C. § 7101(7). While Plaintiffs are not appointed to federal service or subject to Title 5, as long as they are required by law to be considered as federal employees *for any purposes* they cannot be considered CDA contractors because no law, even the CDA, allows an individual to be both a federal employee and a CDA contractor at the same time.

In fact, the FAR, as the regulatory regime implementing the CDA, explicitly bars an award of "a contract to a Government employee," to avoid the significant conflicts of interest that arise when the federal government treats one of its workers both as a federal employee and as a CDA contractor. *See* FAR Subpart 3.6 - *Contracts with Government Employees or Organizations Owned or Controlled by Them*, at § 3.601(a). The FAA's language requires that Plaintiffs be regarded as federal employees for the purposes of many laws that cover conflicts of interest and conduct as a federal employee, *see e.g.*, Am. Compl. ¶ 64-65, and Defendant's motion to dismiss does not dispute the factual allegations in the Complaint that the Agency did indeed treat Plaintiffs as federal employees for the purposes of those restrictions which can only apply to federal employees and not contractors. Subjecting Plaintiffs to a CDA structure will create an unavoidable legal challenge as to what set of conflict of interest restrictions apply to the Plaintiffs: the laws regarding

---

[5] Even if the Court finds that the language of FAA is too ambiguous with regards to Plaintiffs' status as federal employees, the Plaintiffs once again reiterate the significant allegation in the Complaint that the Government has even treated Plaintiffs as federal employees for the purposes of Title V, despite the FAA's clear language, by explicitly requiring them to comply with a number of Title V statutes, including the Hatch Act. *See* Am. Compl. ¶ 68. The Government's attempts to educate the Court about how the FAA's language should be interpreted to determine Plaintiffs' employment status should therefore be taken with a grain of salt.

11

federal employee conduct or the FAR provisions. The Court should reject the Government's motion to dismiss on this affirmative defense, for no less reason to avoid that legal quagmire.

### B. The Case Involves Constitutional and Statutory Issues that the Court is Apt and Authorized to Answer, and not a CDA Contracting Officer

The Defendant's self-serving assertion that the Court does not have the authority to review the sensitive and complex issues implicated in this case until a CDA contracting officer has spoken to them is not only wrong as a matter of law but raises grave concerns regarding the allocation of authority between the federal courts and CDA contracting officers. Congress authorized this Court to review all questions of law that arise from any express or implied contract with the Federal Government, and claims against the United States founded upon the Constitution, decades before the CDA was enacted.

Plaintiffs' central claim is that the Government violated their First Amendment rights by terminating them based on perceived political affiliation. The Supreme Court's unanimous decision in *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), holds that plaintiffs are not required to exhaust a constitutional challenge to an administrative official that has no authority to declare the Government's actions as unconstitutional, when recourse to the federal courts is available. *See also Mathews v. Diaz*, 426 U.S. 67, 76 (1976) (finding that constitutional challenges belonged at the Court because the questions were "beyond the [Agency's] competence."); *Weinberger v. Salf*, 422 U.S. 749 (1975) (same).

The contracting officers are as equally ill-suited to answer the other questions, including whether the Government's breach of contract violated the text of the FAA and other federal laws. Unlike typical CDA breach of contract cases that involve review of the details of each party's performance, complicated contracting cost issues, or other technical issues where the Court's review can benefit from the contracting officer's specialized knowledge or a record created by the

12

contracting officer, this case implicates complicated matters of statutory interpretation about the Agency's own authority that the Court must answer *de novo*. Taking the allegations in the Complaint as true at this stage, as the Court should, Plaintiffs are entitled to the Court's own review of the statutory remedies they allege apply to them because of their status as federal employees, a question that contracting officers have no authority to opine on. For example, the Government treated Plaintiffs as federal employees for the purposes of the Federal Workers' Compensation Act. 5 U.S.C. § 8101 *et seq*. Am. Compl. at ¶ 58. Congress has authorized the Office of Workers' Compensation Programs (OWCP) of the U.S. Department of Labor to resolve disputes regarding entitlements under that provision and not CDA contracting officers. 20 C.F.R. § 1.2 ("The Secretary of Labor has delegated authority and assigned responsibility to the Director of OWCP for the Department of Labor's programs under" 5 U.S.C. § 1801). CDA contracting officers have neither the competence nor the legal authority to consider what scope of entitlement flows from Plaintiffs' status as a federal employee nor to interpret each statutory provision to determine the appropriate damages for the Government's misclassification or mistreatment of Plaintiffs under such statutes when Congress charged another body with the authority to review those claims. Because deferring to the CDA contracting officer on such issues undermines the Court's *de novo* review power, and improperly expands Congress's specific delegations of power, the Court must deny the Government's affirmative defense that the claims should be exhausted first.

### C. The Mere Existence of a Termination for Convenience Clause is Immaterial for Sufficiently Pleading a Breach of Contract Claim and Breach of the Duty of Good Faith and Fair Dealing

Defendant's motion to dismiss argues that plaintiffs "cannot allege" that government's exercise of a termination for convenience clause can constitute breach of contract or a violation of the duty of good faith and fair dealing. Def.'s Mot. at 23. The Government does not possess a common-law power to include a termination for convenience of the government in every contract

13

and exercise it as it wishes with no bounds and no judicial review. Neither does including such a clause and exercising it provide grounds for dismissing breach of contract claims at the motion to dismiss stage.

In the first instance, the issue of the validity of including a termination for convenience clause in *a federal employment* contract—what the Complaint sufficiently alleges this contract is—and the validity of its exercise are both questions for summary judgment and not motion to dismiss. The United States has not provided a single source of authority, neither will it be able to, that indicates that a complaint alleging breach of contract and breach of the duty of good faith and fair dealing can be dismissed under RCFC 12(b)(6), solely on the grounds that the contract included a termination for convenience clause and the Government elected to exercise it. *See* Def.'s Mot. at 22.[6] Mere inclusion of a termination for convenience clause in the contract does not mean that the contract can be legally governed by that provision. Instead, at the summary judgment stage, the Court can independently review the nature of the contract and the underlying nature of the performance to determine whether the termination for the convenience clause is operable. *See e.g.*, *JKB Solutions and Serv., LLC v. United States*, 18 F.4th 704, 708 (Fed. Cir. 2021) (finding that termination for convenience clause incorporated in the contract did not apply to the contract at hand and therefore could not be exercised by the government). Among other issues that require extensive discovery before the Court's determination, the enforceability of the termination for convenience clause in this case is contingent on the Court's ruling on the exact status of Plaintiffs' right and entitlements as federal employees, and if the Court finds Plaintiffs to be federal

---

[6] While it is premature for the Court to address at this stage the Defendant's position that a party cannot "breach the duty of good faith and fair dealing by doing something that is expressly allowed by a contract," the Government's position cannot be reconciled with the established principle that the Government cannot place an unconstitutional condition on contracting with the Government. If the termination for convenience clause is unconstitutional or unlawful, the Government cannot escape liability just because it has done "something that is expressly allowed by a contract." Def.'s Mot. at 22. Neither of the cases cited by the Government for that claim involve motion to dismiss rulings. *Id*. at 22-23.

14

employees, and not contractors, whether the government can ever discharge an employment contract with a federal employee for convenience of the government, and if so, where that authority comes from, if not the CDA and the FAR.[7] The government does not have common law authority to subject every contract to termination for the convenience of the government, which is largely a creature of the FAR, and an extension of the CDA. The Court should therefore deny the Government's untimely attempt to dismiss the Complaint on the basis of the applicability of the termination for convenience power, a question of law that should be reserved for the summary judgment stage.

## II.    The Court Has Jurisdiction over the First Amendment Claim

The Court has jurisdiction over Plaintiffs' First Amendment claim because this Court's predecessor—the Court of Claims—exercised jurisdiction over First Amendment claims in the narrow set of cases where the underlying First Amendment violation illegally deprived a federal employee of backpay, finding the Court's jurisdiction in those cases to be "founded upon the Constitution," and not an explicit act of Congress. *Jackson v. United States*, 192 Ct. Cl. 765, 768, 428 F.2d 844, 846 (1970). Furthermore, contrary to Defendant's assertions, the Court of Federal Claims—as a court of nationwide special jurisdiction—also has First Amendment jurisdiction when the First Amendment claim can be traced to an underlying legal instrument, such as a contract or an act of Congress, that can "fairly be interpreted as mandating compensation," by the Federal Government in the event of a First Amendment violation. *Boaz Housing Authority v. United States*, 994 F.3d 1359, 1364 (Fed. Cir. 2021). When the underlying legal instrument, the contract or the statute, can be fairly interpreted as money mandating, both the Federal Circuit and

---

[7] Here the Contract clearly signified that the Government was relying on the CDA and the FAR for the exercise of the termination for convenience clause, *see* Am. Compl. Ex. A. at 43 ("This contract is established under the procurement authorities of the United States Government and shall be interpreted in accordance with the body of Federal Procurement Law in the United States"); should the Court find that the CDA and the FAR cannot legally apply to this Contract, as Plaintiffs allege, the Government's authority to exercise that clause should be severed from the Contract.

15

the Supreme Court have acknowledged money damages as a source of remedy for First Amendment Plaintiffs—and, often times, as the only source of remedy. Here, both the underlying contracts at issue and the relevant act of Congress, the Foreign Assistance Act, can be fairly interpreted as mandating compensation by the Federal Government for a First Amendment violation. Therefore, the Court can also exercise jurisdiction over the First Amendment claim as founded upon an act of Congress or the contract.

### A. The Court has Historically Exercised Jurisdiction over First Amendment Claims in Federal Backpay Cases as Special Set of First Amendment Claims that are "Founded upon the Constitution"

The Government incorrectly asserts that the First Amendment claim should be dismissed because "any claim based upon the First Amendment is outside this Court's jurisdiction." On the contrary, while the Court broadly lacks *general* jurisdiction over many First Amendment claims, the Court of Claims has historically exercised First Amendment jurisdiction in a special set of cases where the plaintiffs have "been dismissed from their jobs and the suits were maintained on the factual basis of improper *removal*." *Featheringill v. United States*, 217 Ct. Cl. 24 (1978) (emphasis in original). Plaintiffs' First Amendment claims fit squarely within that narrow exception.

To argue to the contrary, Defendant relies on *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983), for the claim that the First Amendment "may not serve as the sole basis" for a First Amendment claim. Def.'s Mot. at 14. While *Connolly* has been cited routinely and correctly for the proposition that the Court does not have *general* First Amendment jurisdiction, *Connolly* acknowledged and did not disturb the Court of Claims' precedent that the Court has historically exercised First Amendment jurisdiction in backpay cases as an exception to that general rule. *See Connolly*, 716 F.2d at 887 (noting that the First Amendment cases "primarily invovl[ing] claims for back pay," are "quite distinguishable" from other Fist Amendment cases). As examples, the

16

Court in *Connolly* cited to *Jackson v. United States*, 192 Ct. Cl. 765 (1970) and *Swaaley v. United States*, 180 Ct. Cl. 1, 376 F.2d 857 (1967). In *Swaaley*, the Court reviewed a mechanic's termination from his shipyard work at the Department of the Navy and had to decide if terminating Swaaley in response to his speech, which his supervisors had claimed "had maligned" the workplace violated the First Amendment. *Id*. at 5.

And in *Jackson*, plaintiff worked for the Department of Agriculture as a teacher for the disadvantaged communities, and he claimed that his termination violated the First Amendment because it was in retaliation to his speech calling into question his supervisor's approach towards serving the African American community. In both cases the Court exercised jurisdiction over First Amendment claims because the claims arose from an improper removal claim. While the Federal Circuit in *Connolly* had the opportunity to overturn *Jackson* and *Swaaley*, it did not, and both cases remain binding. *Connolly*, 716 F.2d at 887; *see also S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) ("We hold that the holdings of our predecessor court[], the United States Court of Claims[,] . . . shall be binding as precedent in this court.").

Defendant's characterization of *Connolly*'s holding is also incorrect. Defendant states that *Connolly* holds that violation of the First Amendment may form part of the basis for a wrongful discharge claim only when "brought under a statute that is explicitly money mandating." Def.'s Mot. at 14. That simply cannot be the holding of *Connolly*, because the Court of Claims explicitly stated in *Jackson* that the Court of Claims' jurisdiction in this subset of First Amendment cases came from the constitution and not from an explicit money mandating statute. *See Jackson*, at 846 ("This is a claim *'founded upon the constitution'* of which we have jurisdiction by virtue of 28 U.S.C. § 1491(1), a jurisdiction we have exercised in a recent backpay suit similar to this one.") (emphasis added).

Instead, *Connolly*, merely narrowed the holding of *Jackson* and *Swaaley* to state that for viable First Amendment claims, there must be a pay structure "in accordance with" which the Court can order money damages. *Connolly*, at 887. *Connolly*, therefore, merely demands that *Jackson* and *Swaaley*'s holdings only apply to cases where Plaintiffs have some objective metric to point to for the rate of compensation that they are owed in terms of backpay, in order to make the claims money-mandating.

The Court in *Connolly* dismissed the First Amendment claims, because unlike the plaintiffs in *Swaaley* and *Jackson*, the *Connolly* plaintiff did not have a clear pay schedule akin to general schedule (GS) employees. Similar to the plaintiffs in *Swaaley* and *Jackson*, the Plaintiffs in this case have a pay schedule that tracks the statutory mandated GS scale. *See* Am. Compl. Ex. A at 12 (noting that annual salary is "is equivalent to a GS-14/Step 06 on the 2023 GS pay scale with Washington, DC locality," and "The <u>actual</u> Federal Raise for this contract will be equal to the rate and effective as of the date of any raise received by U.S. Government employees <u>if applicable</u>.") (underlined in original). Because Plaintiffs have a pay structure "in accordance with" which they can receive backpay and money damages, the Court should find that the First Amendment claim is 'founded upon the constitution,' and therefore the Court has jurisdiction by virtue of 28 U.S.C. § 1491(1), as the Court did in *Swaaley* and *Jackson*.[8]

### B. The Supreme Court Has Held that First Amendment Claims Can also be Money Mandating When the Underlying Act of Congress Anticipates Money Damages

Even if the Court finds that *Connolly* limits the reach of the Court's First Amendment jurisdiction in removal cases more than just requiring an accompanying set pay structure,

---

[8] Even if the Court finds that Plaintiffs' work status and pay structure are unclear, the Court should deny the Government's motion to dismiss as to the First Amendment claim at this juncture and rule on the question of the jurisdiction after discovery regarding Plaintiffs' pay and employment status, because in both *Swaaley* and *Jackson,* the Court addressed its First Amendment jurisdiction at the motion for summary judgment stage against the background of factual discovery about those plaintiffs' pay and employment status, not at motion to dismiss.

18

*Connolly*'s emphasis on a background statutory right to money damages should be applied in light of Supreme Court's decision in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). The Supreme Court held in *Tanzin* that First Amendment plaintiffs can be entitled to money damages when money damages is the only form of relief for the violation and when the statutory language anticipates money damages, even if it does not explicitly state it. Here, Congress labeled Plaintiffs as federal employees and the Defendant treated Plaintiffs as federal employees. In doing so, the Foreign Assistance Act envisioned money damages for removals in violation of First Amendment because federal employees have long been awarded that relief as appropriate relief.

### 1.  The Supreme Court's Decision in *Tanzin*

In *Tanzin* the Court reviewed whether the Religious Freedom Restoration Act of 1993 (RFRA) authorized award of money damages to First Amendment plaintiffs when its statutory text does not explicitly reference award of money damages. The Court held that RFRA's use of the phrase "appropriate relief" was enough to authorize reward of money damages for First Amendment plaintiffs against the federal government when (1) that relief would be the only type of relief that could remedy the violation; and (2) that type of relief has traditionally been rewarded for the type of violation as a matter of historical precedent. *Tanzin*, at 50-52. Applying this standard to a Muslim plaintiff that had been improperly placed on the no-fly list and had lost the tangible value of his plane ticket, the Court held that *Tanzin* could recover money damages because there would be no other form of relief available and because Congress could have anticipated the award of such damages in passing RFRA when First Amendment plaintiffs had historically received

19

money damages in the past for similar violations in Section 1983 lawsuits.[9] Both conditions equally apply here.

### 2. *Tanzin* Applies in This Case

By designating Plaintiffs as federal employees under the FAA, Congress entitled Plaintiffs to the types of damages that have traditionally been awarded when public employees are terminated in violation of the First Amendment. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (finding that courts must assume that Congress "is aware of existing law when it passes legislation"). In addition to the Court of Claim's own history of rewarding backpay for employees terminated in violation of the First Amendment in *Swaaley* and *Jackson*, money damages in the form of backpay have also been historically recognized as the appropriate relief for First Amendment retaliation. Particularly in the context of Section 1983 actions, what the Court used as the analogue to determine if money damages should be available for RFRA in *Tanzin*, courts have historically awarded reinstatement and backpay in Section 1983 lawsuits when public employees are improperly terminated in violation of the First Amendment as well. *See, e.g.*, *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391 (D. Conn. 2017) (affirming jury award of $1.5 million in compensatory damages for First Amendment retaliation); *Pucci v. Somers*, 834 F. Supp. 2d 690 (E.D. Mich. 2011) (affirming jury award of over $500,000 in compensatory damages for First Amendment retaliation). Because Congress through the FAA's plain language identified Plaintiffs as federal employees, the text of the FAA should be read to incorporate the expectation

---

[9] The Defendant's motion to dismiss relies on a statement from *Maweu v. United States*, No. 25-1469, 2025 WL 2995528, at *2 (Fed. Cl. Sept. 24, 2025) (citing *Tanzin*, 592 U.S. at 52) to state that the Court in *Tanzin* found RFRA to be money-mandating because "it only allows damages via 42 U.S.C. § 1983." Def.'s Mot. at 15. It is unclear what this statement refers to, but *Tanzin* only used available remedies under Section 1983 as a reference point and as an example to fashion the remedies that should be available under RFRA, as the Court should do so in this case. RFRA, which provides for First Amendment claims against federal officials, does not authorize damages "via" Section 1983, a wholly separate statute that covers civil rights claims against state officials.

of money damages in the event of an unlawful termination in violation of the First Amendment under *Tanzin*'s reasoning.

### III.    The Court has Jurisdiction over the APA Claims

As the Complaint asserts the Court has authority to review the termination pursuant to APA because the Court 1) has historically applied APA when the record of the administrative process needs to be reviewed to determine whether the United States violated government employees' pay entitlements, *see Keltner v. United States*, 165 Fed. Cl. 484 (2023), and 2) when the administrative record could establish that contractual termination was pretextual or unrelated to the contractors' alleged inability to fulfill their obligations. *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319 (1999); Am. Compl. at ¶ 139. Both conditions apply in this case.

This historical precedence has more support now from the Supreme Court which recently signaled in *Dept. of Ed. v. California*, 604 U.S. 650 (2025) that APA cases can proceed before the Court of Federal Claims. The United States' motion to dismiss puts forward three cases for the proposition the Court cannot review the case under the APA as a matter of "black letter law." *See* Def.'s Mot. at 16 (citing to *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc), *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005), and *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993)). While the cases establish that the Court does not always have APA jurisdiction, they do not contradict the assertion that the Court has historically applied the APA in the two scenarios mentioned in the Complaint. In *Martinez*, the Federal Circuit acknowledges that the Court has applied APA in "denial of back pay cases." *See Martinez*, at 1313-14 (acknowledging that in cases where "the underlying basis for the suit is the denial of back pay," the Court of Claims and the Court of Federal Claims "have often reviewed not only the underlying discharge actions, but also the actions of correction boards," to determine if they are arbitrary and capricious). *Lion Raisins*, as well, states in a footnote that there is no

21

"*general* federal question jurisdiction" to review APA claims at the Court of Federal Claims (not an issue in that case), without discussing the historical exceptions where the Court has applied the APA. 416 F.3d at 1370 n.11 (emphasis added). Finally, in *Murphy*, the Plaintiff had not asserted an APA claim, and therefore there was no finding regarding application of arbitrary and capricious standard on review at the Federal Circuit. The statement cited by the Government appears in dicta at the end of the decision and addresses what would have happened had that plaintiff decided to proceed only on an APA basis. *Murphy*, at 874. Neither of the Federal Circuit's decisions can stretch as far as the Government wants them to and show that it is "black letter law" that the Court lacks APA jurisdiction, because in its later opinions, the Federal Circuit has endorsed the Court's application of APA: in particular, stating in *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) that "it has become well established that judicial review of decisions of military correction boards is conducted under the APA."

The Government's incomplete response is yet another attempt to deny the Court its independent authority to investigate the serious allegations in this case by diverting the Court's attention from the relevant administrative record and narrowing its focus towards the contracting officers' incomplete and inadequate explanations as to what transpired at the Agency, what law should apply, and who really made the decisions. This court has historically applied the APA in cases such as *McDonnell* and *Keltner,* because in certain cases the Court must review records of agency-wide proceedings and many agency actors' subsidiary factual findings (those other than the original final decision-makers) to determine if plaintiffs were wrongfully denied money by the federal government. In such cases, the administrative record captures the relevant agency-wide deliberations leading into the final agency decision that final decision maker acted on. This is precisely the case here, where all Plaintiffs were denied money and entitlements to the value of

22

their contract because each contracting officer that terminated the contract acted to effectuate an agency-wide edict to subject employees to an agency-wide reduction in force, instead of exercising independent judgment about individual contract performance. Therefore, unlike individual contract termination cases, the Plaintiffs' breach of contract and wrongful termination claims are intrinsically tied to the contracting officers' decision to act in pursuance to an agency-wide final order: the Agency's determination on how to interpret the text of the statutes it is in charge of enforcing, like the FAA, how that law should be interpreted as to all PSCs, the Agency's programmatic decision to conduct a RIF, and its legal authority to subject Plaintiffs to that RIF. These are "final agency actions," typical of APA adjudication, that animated the termination of the contracts in this case, and the contracting officer had no choice but to enforce them. The only avenue for the Court to review that record is *de novo* review under the APA,[10] and as Chief Judge Solomson recently noted, the Court's Tucker Act jurisdiction requires the Court to "not defer to an agency's fact finding or conclusions, but instead receive[] new evidence, make[] its own factual findings, and reach[] an independent determination regarding whether a plaintiff has substantiated its claim by a preponderance of the evidence." *White v. United States*, 175 Fed. Cl. 146, 158 (2025). As Chief Judge Solomson has noted, this *de novo* standard, both as a matter of legal requirement and historical practices, allows the Court to review certain money-mandating claims in tandem with the APA, which allows the Court to order and review an administrative record. *Id*. at 161.

This is in line with the Supreme Court's decision in *California*, which as a matter of fact invites grant holders to present their APA claims to the Court of Federal Claims. The

---

[10] Because the APA is the special mechanism for judicial review of "final agency actions", the Court should not dismiss the APA claims under the basis that a contracting officer allegedly made the final decision to terminate without factual discovery into whether the contracting officer exercised independent judgment in terminating the contracts or merely acted to enforce an agency-wide final action regarding RIFs, in which case review of the administrative record would be necessary to elucidate the contracting officers' decision.

Government's argument that the Supreme Court's decision in *California* should not be read to reenforce "decades of contrary precedent," that this Court is incapable of exercising APA jurisdiction mischaracterizes the Supreme Court's approach towards that issue. Def.'s Mot. at 17. In fact, the Court's ruling in *California* is in line with the Court's precedence also endorsing APA review at the Court of Federal Claims. *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (first citing *Grieg v. United States*, 640 F.2d 1261 (Ct. Cl. 1981); and then *Sanders v. United States*, 594 F.2d 804 (Ct. Cl. 1979), and explaining that correction board "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence"); *see also White*, 175 Fed. Cl. at 159 (noting that while the Supreme Court has never decided the issue of whether the APA literally applies, it "has long endorsed" the Court's application of APA standard of review). Because the nature of the claims in this case fit within the category of cases where the Court has previously exercised APA jurisdiction, the Court should deny the Government's motion to dismiss as to Count IV.

## CONCLUSION

Plaintiffs respectfully submit that the Government's motion should be denied.

Dated: February 9, 2026

Respectfully submitted,

/s/ *Thomas M. Craig*
Thomas M. Craig, Esq.
**Fluet**
1751 Pinnacle Drive, Suite 1000,
Tysons, VA 22102
T : (703) 590-1234
F : (703) 590-0366
tcraig@fluet.law
e-file@fluet.law

*Of Counsel*:
Kia Rahnama, Esq.
krahnama@fluet.law

*Counsel for Plaintiffs*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Federal Claims by using the CM/ECF system. I also certify that the foregoing document is being served on Defendant's counsel of record and that service will be accomplished by the CM/ECF system.

<u>/s/ Thomas M. Craig</u>
Thomas M. Craig, Esq.
