# In the United States Court of Federal Claims

No. 25-1651
Filed: September 23, 2026

**SCHALA BATTLE, et al.,**

***Plaintiffs*,**

**v.**

**THE UNITED STATES,**

***Defendant*.**

*Thomas M. Craig*, with *Kiarash Rahnama Moghaddam*[1], Of Counsel, Fluet, Tysons, VA, for Plaintiffs.

*Thomas J. Adair*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brett A. Schumate*, Assistant Attorney General, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

Ordinarily, a motion to dismiss does not require the Court to resolve the merits of a plaintiff's claims. But when those claims are so deeply intertwined that their legal sufficiency cannot be assessed in isolation, the Court must undertake precisely that analysis. Such is the case here. To determine whether any of Plaintiffs' claims survive the United States' Motion to Dismiss, (Def.'s Mot., ECF No. 12), the Court must pick through factual and legal interdependencies—an exercise that typically belongs to summary judgment or trial. The particular structure of this Complaint, however, leaves no alternative. Ultimately, the Court finds that Plaintiffs have failed to exhaust their relevant administrative remedies. Absent exceptional circumstances—which Plaintiffs have not demonstrated—this failure is fatal. Accordingly, the United States' Motion to Dismiss is **GRANTED**. (*See* Def.'s Mot.).

## I. Background

Plaintiffs are a group of twenty-eight personal service contractors ("PSCs") previously working for the United States Agency for International Development ("USAID"). (Am. Compl.

[1] Mr. Rahnama has since withdrawn, (Notice of Withdrawal, ECF No. 17), but argued on behalf of Plaintiffs at the April 22, 2026, Oral Argument, (*see* Oral Argument Transcript ("Tr."), ECF No. 16)).

at ¶¶ 17–45, ECF No. 9). In February 2025, USAID terminated Plaintiffs' employment contracts. (*Id.* at ¶ 7). Plaintiffs allege that their "contracts were terminated abruptly and without cause because the administration could not trust the political affiliation of these federal employees and viewed their work as indirect financial support for the Democratic Party." (*Id.* at ¶ 8).[2] Specifically, Plaintiffs contend they are federal employees rather than contractors, arguing that not only were their contracts terminated without cause, but this termination was also a violation of the Administrative Procedure Act ("APA") and their First Amendment right against patronage-based employment decisions as federal employees. (*Id.* at ¶¶ 50–51, 54, 111–12, 138–48). Accordingly, Plaintiffs allege four counts against the United States: (1) violation of their First Amendment right; (2) breach of contract; (3) breach of contract based on the breach of the covenant of good faith and fair dealing; and (4) violation of the APA. (*Id.* at ¶¶ 113–48). Plaintiffs seek to recover traditional breach of contract remedies, including "compensatory and consequential money damages, back pay, interest, attorney fees, and any and all costs" that Plaintiffs contend are owed.[3] (*Id.* at ¶ 109).

The United States moves to dismiss. (Def.'s Mot. at 1). It argues that the Court has no jurisdiction over Plaintiffs' claims because: (1) the First Amendment is not money mandating; (2) the Court has no jurisdiction over APA claims; and (3) Plaintiffs fail to state a claim for either of their breach arguments and have not exhausted their administrative remedy as *contractors* for the federal government. (*Id.* at 7–17).

## II. Analysis

[2] To support this argument, Plaintiffs cite a number of statements made by public officials. (*See* Am. Compl. at ¶ 70 (*President Trump Speaks to Reporters Upon Return from Mar-a-Lago*, C-SPAN (Feb. 2, 2025), https://www.c-span.org/program/public-affairs-event/president-trump-speaks-to-reporters-upon-return-from-mar-a-lago/655273); ¶ 71 (Jennifer Hansler *et al., Elon Musk said Donald Trump agreed USAID needs to be 'shut down'*, CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge); ¶ 75 (*Jake Tapper left stunned as Stephen Miller explains why Trump ordered a surprise freeze on federal spending*, DailyMail (Jan. 29, 2025), https://www.dailymail.co.uk/media/article-14336461/Jake-Tapper-Stephen-Miller-trump-freeze-fed-spending.html); ¶ 78 (*Pete Marocco tried to upend USAID in 2020 — and failed. In 2025, he dismantled it*, NPR (Mar. 25, 2025), https://www.npr.org/sections/goats-and-soda/2025/03/25/g-s1-50582/usaid-pete-marocco-trump-foreign-aid), ECF No. 9).

[3] Plaintiffs also seek "an order directing restoration to their positions." (Am. Compl. at 2). However, the Court's ability to grant equitable relief is narrowly tailored. *First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1294 (Fed. Cir. 1999). Reinstatement is further limited only to positions the party previously held. *See United States v. Testan*, 424 U.S. 392, 402 (1976); *Williams v. United States*, 130 Fed. Cl. 761, 768 (2017). USAID, and especially Plaintiffs' particular positions, effectively no longer exist. *See* EMILY M. MCCABE, CONG. RSCH. SERV., IF10261, U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT: AN OVERVIEW (2025). Accordingly, the Court cannot reinstate Plaintiffs.

The burden of establishing subject-matter jurisdiction rests with the plaintiff, who must do so by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all uncontroverted factual allegations made by the non-movant and draws all inferences in the light most favorable to that party. *See Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). Pursuant to RCFC 12(b)(1) and 12(h)(3), the Court must dismiss claims that do not fall within its subject-matter jurisdiction. Under RCFC 12(b)(6), the Court must dismiss a complaint when it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Sufficient facts "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Reasonable factual inferences are taken in favor of the plaintiff. *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). The Court is not required to accept the complaint's legal conclusions. *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

This Court's jurisdiction extends to claims: (1) founded on an "express or implied contract with the United States[;]" (2) seeking a refund for a payment made to the government; and (3) arising from federal constitutional, statutory, or regulatory law mandating payment of money damages by the government. *Fisher v. United States*, 402 F.3d 1167, 1172–73 (Fed. Cir. 2005) (citing 28 U.S.C. § 1491(a)(1)). Pursuant to the Tucker Act, the Court may also exercise jurisdiction over non-monetary claims that are "incident of and collateral to" a monetary claim and are necessary to provide a complete remedy. 28 U.S.C. § 1491(a)(2). Thus, the Court can hear constitutional claims only when they are tethered to a money-mandating source of law. *Newtech Rsch. Sys. LLC v. United States*, 99 Fed. Cl. 193, 201 (2011), *aff'd*, 468 F. App'x 985 (Fed. Cir. 2012); *Connelly v. United States*, 716 F.2d 882, 887 (Fed. Cir. 1983). Taken together, these jurisdictional principles underscore a central constraint on the Court's authority: it may adjudicate constitutional or equitable claims only when tethered to a valid money-mandating cause of action.

The Federal Circuit has determined that the First Amendment neither explicitly nor implicitly mandates compensation. *Connolly*, 716 F.2d at 886–87 (citing *Featheringill*, 217 Ct. Cl. 24, 32–33 (1978)). However, the Court may hear First Amendment claims when they accompany properly presented claims for backpay or other monetary relief. *See Jackson v. United States*, 192 Ct. Cl. 765, 768 (1970); *Swaaley v. United States*, 180 Ct. Cl. 1, 11–12 (1967); *Cole v. United States*, 231 Ct. Cl. 702, 705 (1982) (hearing a First Amendment claim for an at-will employee alleging wrongful termination). The Court may consider non-money-mandating claims—such as First Amendment claims—as collateral to money-mandating claims when necessary to afford complete relief. *Overview Books, LLC v. United States*, 72 Fed. Cl. 37, 41 (2006), *aff'd*, 232 F. App'x 989 (Fed. Cir. 2007); *see also Oliveira v. United States*, 827 F.2d 735, 737 (Fed. Cir. 1987) (confirming jurisdiction over collateral reinstatement alongside damages); *Williams v. United States*, 130 Fed. Cl. 761, 769 (2017) (permitting collateral equitable relief ancillary to a backpay award). But collateral jurisdiction exists only if the underlying money-mandating claim is itself within the Court's jurisdiction. Thus, before the Court may consider any ancillary or collateral claims, it must first confirm that the Plaintiffs have established a viable monetary claim within the Tucker Act's scope.

This jurisdictional threshold makes Plaintiffs' employment status a determinative issue rather than a peripheral one.[4] Whether Plaintiffs are contractors or federal employees dictates not only the substantive rights available to them but also the procedural avenues they must follow. The Contract Disputes Act's ("CDA") administrative exhaustion requirement applies squarely to contractors, and Plaintiffs' attempt to recast themselves as federal employees is therefore central to their effort to avoid that prerequisite. *See* 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision."). The Court must resolve this question of status first before assessing further claims because if Plaintiffs' claims fall within the CDA's mandatory framework, their jurisdictional theory collapses. Here, whether Plaintiffs are contractors or employees is a mixed question of both fact and law. Therefore, "the Court must determine 'whether answering it entails primarily legal or factual work.'" *Nieves v. Sec'y of Health & Hum. Servs.*, 167 Fed. Cl. 422, 428 (2023) (citing *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 388 (2018)).

In the motion to dismiss context, the standard for establishing jurisdiction is not high—Plaintiffs must allege facts that, accepted as true, render their jurisdictional theory plausible and rise above "the speculative level." *Twombly*, 550 U.S. at 555–56. The Court will draw all inferences in the light most favorable to the non-moving party but is not required to accept Plaintiffs' legal conclusions. *See Estes Exp. Lines*, 739 F.3d at 692; *Am. Bankers Ass'n*, 932 F.3d at 1380. The United States maintains that the Plaintiffs are contractors required to exhaust their administrative remedies prior to filing an action—namely, "to make a valid claim to the contracting officer prior to litigating that claim." (Def.'s Mot. at 12 (citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010)). None of the twenty-eight Plaintiffs here have made a claim to their respective contracting officers. (*See* Tr., Pls.' Counsel, 25:20–26:10). Plaintiffs argue that they are employees rather than contractors and therefore were not required to exhaust their administrative remedies under the CDA. (*See* Pls.' Resp. at 10–13, ECF No. 13).

---

[4] Counsel for both parties confirmed that this determination was crucial to make at this preliminary stage. (Tr., 23:8–20 (The Court: "Is [whether the Plaintiffs are employees or contractors] a determination that needs to be made now or is that a determination which should be deferred to a more fulsome record and briefing?" Pls.' Counsel: "[I]t's crucial to rule on it right now for a few reasons.")). Counsel for the United States agreed:

> Your Honor, I disagree with one thing I think that I heard the Court say, that I think the Plaintiffs actually said that I agree with, which is that you do need to determine, at this preliminary stage, whether or not they are contractors or employees . . . . Because if they are contractors, they've got to comply with the CDA. If they're employees, they're subject to the Civil Service Reform Act, and they've got to bring their claims at the MSPB. So that's a fundamental thing.

(*Id.*, 36:14–25).

Plaintiffs support their employee argument by asserting that "[t]he text of the contract and the underlying statutory grant of authority imposed on the United States the obligation to refrain from treating the Plaintiffs as employees for the purposes of any laws administered by [the Office of Personnel Management ("OPM")]." (Am. Compl. at ¶ 124). Per the Restatement (Second) of Contracts § 202(1), "[w]ords and other conduct are interpreted in the sense in which the party using them should reasonably expect to be understood by the other party." *See also id.* § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom they come."). Thus, the Court begins with the plain language of the contract for guidance as to Plaintiffs' employment status. The example contract provided by Plaintiffs expressly identifies the named Plaintiff as a personal services contractor. (*See* Am. Compl. Ex. A, ECF No. 9-2). The contract itself is titled "Contract with an Individual for Personal Services[,]" and is executed by a contracting officer. (*Id.* at 1). The fifty-three-page contract references the named Plaintiff as "the Contractor" more than four hundred times. (*See id.*). This is distinct from a "USAID direct-hire employee." (*See id.* at 22 ("[t]he contractor may use sick leave on the same basis and for the same purposes as USAID direct-hire employees"), 24 ("direct-hire *or* a personal services contractor") (emphasis added), 35 ("Transportation costs will be paid on the same basis as for USAID direct-hire employees serving the same length tour of duty[.]")). The repeated and deliberate use of the term "the contractor," the structural distinctions drawn between PSCs and direct-hire employees, and the statutory references embedded in the agreement all demonstrate that USAID intended to create a contractual relationship governed by procurement law. The document creates no ambiguity; Plaintiffs are contractors.

Plaintiffs argue that "the United States identifies the Plaintiffs as federal employees in their contracts," presumably referring to the phrase "as an employee for purposes of Section 636(a)(3)" on the second page of the contract. (Am. Compl. at ¶ 111; Ex. A at 2). This phrasing is limited and contextual, and the Court declines to extend the reading of these terms past reasonable limits. These almost innumerable references to the named Plaintiff as a contractor and the distinction between "contractor" and "direct-hire employee," reasonably construed, are clear: the contract is plainly a personal services contract, not an employment agreement. Plaintiffs' reliance on an isolated phrase cannot overcome the overwhelming textual evidence that the parties understood and agreed to a personal services contract. The Court's interpretive task is guided by the plain meaning of the terms the parties chose, and those terms leave no room for the expansive reading Plaintiffs propose.

Even so, the Court takes its analysis a step further. The contract was awarded to the named Plaintiff pursuant to "Section 636(a)(3) of the Foreign Assistance Act of 1961, as amended." (Ex. A at 2). The contract also provides that:

> For U.S. Citizens and U.S. Resident Aliens: As an employee for purposes of Section 636(a)(3) of the Foreign Assistance Act of 1961, as amended (22 USC 2396(a)(3)), the Contractor is generally an employee of the United States for purposes of laws other than those administered by the Office of Personnel Management (i.e., Title 5, United States Code). This includes being an employee of the United States for the purposes of Title 26, United States Code, which subjects the Contractor to withholding for both FICA and

> Federal Income Tax and precludes the Contractor from receiving the federal earned income tax exclusion of 26 USC Section 911.

(*Id.*).

Plaintiffs interpret Section 636(a)(3) to mean that the federal government is "required by law to identify them and treat them as federal employees." (Am. Compl. at ¶ 111). To bolster this argument, Plaintiffs make a series of logical leaps that the Court cannot accept. Plaintiffs cite 22 U.S.C. § 2396(a)(3), the statute codifying Section 636(a)(3), which states that: "contracting with individuals for personal services abroad: *Provided*, [t]hat such individuals shall not be regarded as employees of the United States Government for the purpose of any law by the Civil Services Commission."[5] (*See* Pls.' Resp. at 9 (citing § 2396(a)(3)). However, Plaintiffs omit the first portion of the section which clarifies that the provision applies to "contracting with individuals for personal services abroad." (*See id.*). As for the application of that statute, Plaintiffs argue that therefore:

> Applying the traditional tools of statutory interpretation—as the Court must—means that Congress' decision to include one thing implies the exclusion of all others not mentioned. Therefore, by stating that Plaintiffs shall not be regarded as federal employees <u>only for the purposes</u> of one set of laws (those appearing in Title V), Congress mandated that Plaintiffs be considered as federal employees for the purposes of all and many other personnel laws that appear outside of Title V.

(*Id.* (cleaned up)).

Plaintiffs have fashioned an argument that collapses under its own weight. Plaintiffs ask the Court for an exceedingly bold interpretation of § 2396(a)(3): that Congress *actually intended to make all individuals contracting for personal services federal employees for all other laws outside of Title V*. (*See id.*). Plaintiffs provide no persuasive support for this claim. Section 636(a)(3) does not transform PSCs into federal employees; rather, it delineates narrow circumstances in which PSCs are treated as employees for limited, non-OPM purposes. Plaintiffs' argument attempts to invert this structure, treating a narrow exception as a sweeping rule. Following this logic to its conclusion, this argument would result in effectively a statutory override of all contracts for personal services entered into by all federal agencies and their implementers. All personal services contractors would be plunged into a gray zone—outside the scope of OPM, but in the ambit of "all other laws outside of Title [V]." (*See* Pls.' Resp. at 9). The Court cannot take this impossible journey as presented by the Plaintiffs. At best, Section 636(a)(3) confirms that Plaintiffs are excluded from Title V protections *because they are not federal employees*.

Because Plaintiffs are statutorily and contractually contractors, the CDA's exhaustion requirement applies with full force. *See* 41 U.S.C. § 7103(a)(1). As stated above, none of them

---

[5] The Office of Personnel Management succeeded the Civil Service Commission and administers Title V of the U.S. Code. 5 U.S.C. § 1302.

have satisfied the administrative requirements prior to litigating their claims in this Court. *See Maropakis*, 609 F.3d at 1328; (Tr., 26:2–27:18 (Plaintiffs' counsel explaining why they advised their clients to not seek resolution from a contracting officer)). Plaintiffs' failure to pursue the administrative remedy is not a curable defect; it is a jurisdictional bar that prevents the Court from reaching the merits of any additional claims. Plaintiffs' attempt to bypass this requirement by recharacterizing their status cannot succeed where the governing documents and statutory scheme speak so plainly. Without exhaustion, the Court lacks a complete administrative record and cannot exercise jurisdiction over their claims. *Meridian Eng'g Co. v. United States*, 885 F.3d 1351, 1355 (Fed. Cir. 2018) ("[T]he CDA itself does not provide a cause of action to which money damages may accrue; it is the claim asserted pursuant to the CDA that is the source of potential damages and review by the trier of fact."). It is possible that Plaintiffs may still exhaust their administrative remedy by presenting their claims to whatever contracting officer remains within the hierarchy of the Agency. For that reason, the Court understands that Plaintiffs may again seek relief.

Under its current posture, the Court has no jurisdiction over Plaintiffs' breach of contract claims. Plaintiffs' First Amendment and APA claims are derivative and require a money-mandating source of law to establish jurisdiction in this Court. Because no such source exists here—the administrative exhaustion defect precludes jurisdiction over the threshold claim—the Court also lacks jurisdiction over Plaintiffs' remaining claims.

## III. Conclusion

Plaintiffs' arguments here are novel but ultimately unpersuasive. Ultimately, the Court's interpretation of the contract at issue and the relevant law confirms that these personal services contractors are just that—contractors. Neither USAID nor Congress (nor Plaintiffs until litigation) believed that these contracts entitled them to full federal employee status. Plaintiffs' failure to pursue the administrative remedy available to them is not a mere procedural misstep; it is a jurisdictional defect. Moreover, Plaintiffs advance no argument—much less adequate justification—for why an exception to the exhaustion requirements should apply here. Having neither exhausted the available remedy nor adequately articulated grounds for dispensing with exhaustion, Plaintiffs have not presented a claim upon which this Court could exercise jurisdiction. Accordingly, the United States' Motion to Dismiss is **GRANTED**. The Clerk **SHALL** enter judgment accordingly.

**IT IS SO ORDERED.**

s/ David A. Tapp
DAVID A. TAPP, Judge